Curtis W. **PLANK**, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant-Appellee.

No. 83–5333.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1984.

Decided May 29, 1984.

Michael R. Dowling (argued), Ashland, Ky., for plaintiff-appellant.

Karl Anderson, Asst. U.S. Atty., Lexington, Ky., Carl H. Harper, Dept. of Health and Human Services, Paula L. Kocher, Atlanta, Ga., for defendant-appellee.

Before KEITH, MERRITT and KRUPANSKY, Circuit Judges.

PER CURIAM.

This is an appeal from a district court judgment affirming the Secretary's decision to terminate the claimant's benefits. The Secretary determined that the claimant wilfully failed to follow prescribed medical treatment. For the reasons set forth below, the decision of the district court is affirmed.

Claimant, Curtis Plank, was awarded a period of disability benefits beginning September 8, 1977 when he was injured by a bag of wet cement that fell five stories from a building under construction. The falling bag struck Plank on the back and neck.

Plank consulted Dr. Donald Blair after he was injured. X-rays of the skull, cervical, thoracic, and lumbar spine were normal. Further consultation in 1978 by neurological and orthopedic surgeons disclosed no abnormalities. Dr. Eugene Parr, the orthopedic surgeon who examined Plank, felt that Plank had made a full recovery and could return to work in August 1978.

Dr. Blair referred Plank to Dr. Ranjit Sinha, a psychiatrist, for a psychiatric evaluation as a result of Plank's continuing complaints of back pain. Dr. Sinha saw Plank twice in September 1978 and ordered testing to determine whether Plank's source of pain was a psychiatric problem. Subsequent psychiatric and psychological examinations revealed that Plank had an IQ bordering on mental retardation and was suffering from emotional problems. Psychotherapy treatment was recommended for Plank to improve his emotional condition.

Dr. Sinha reviewed the test results with Plank on October 31, 1978 and they discussed the possibility of psychotherapy. Dr. Sinha recommended that Plank participate in a pain clinic at the University of Kentucky Medical Center. He also noted that Plank did not appear willing to undergo such treatment at that time. On December 12, 1978, Dr. Sinha again recommended psychotherapy and informed Plank of the need to begin psychotherapy immediately following the Christmas holiday.

Plank did not consult with Dr. Sinha again until January 18, 1979. Dr. Sinha noted that he again discussed the possibility of psychotherapy with Plank. Plank responded that he was not certain if he could begin therapy because he was seeing Dr. Blair regularly but he would inform Dr. Sinha of his decision the following week. The record indicates that this was the last time Plank consulted with Dr. Sinha.

Subsequent physical examinations of Plank by other doctors revealed no objective sources to substantiate Plank's complaints of pain. Almost all of the doctors stated there was a psychological or psychiatric element to Plank's complaints. Only Dr. N.C. Marsh, a chiropractor, felt that Plank was totally and permanently disabled. Dr. Marsh diagnosed Plank as suffering from traumatic neurosis resulting from sprained and strained muscle ligaments of the cervical, dorsal and lumbar spine.

A final psychiatric evaluation was conducted on February 7, 1981 by Dr. John J. Schwab, Chairman of the Department of Psychiatry in the School of Medicine of the University of Louisville. Dr. Schwab diagnosed Plank's mental condition as chronic, severe post-traumatic stress. He felt that Plank's mental condition would improve only by hospitalization in a psychomatic unit such as those at the University of Cincinnati and the Mayo Clinic where he would receive therapy and rehabilitation for three to four months.

On March 19, 1981, Plank was informed by the Social Security Administration that it had determined that his benefits would

cease as of October 1980 because he was no longer severely disabled. Plank requested a hearing before an Administrative Law Judge (ALJ) and one was held on July 15, 1981. The ALJ found that Plank did suffer from a severe medical impairment, i.e., post-traumatic stress disorder reinforced by secondary gain and a history of low back strain. However, the ALJ also concluded that Plank willfully failed to follow prescribed medical procedure in violation of 20 C.F.R. § 404.1530. Accordingly, the ALJ terminated Plank's benefits.

The Appeals Council affirmed the ALJ's findings by a decision dated November 16, 1981. The district court upheld this decision on October 12, 1982. A motion for reconsideration was denied by the district court on March 29, 1983.

Plank now argues before this Court that it was an abuse of discretion for the ALJ to find him disabled within the meaning of the Act but yet disqualify him from receiving benefits because he did not continue seeing a psychotherapist and instead consulted a physician specializing in family medicine.

We find this argument unpersuasive. Plank's assertion shows a misunderstanding of the ALJ's findings. The ALJ did not find that Plank was disabled within the meaning of the Act. Instead, the ALJ found that Plank suffered from severe, chronic post-traumatic stress reinforced by secondary gain. In fact, the ALJ specifically found that Plank was not disabled within the meaning of the Act due to his willful failure to follow prescribed medical treatment in violation of 20 C.F.R. § 404.-1530.

Plank also asserts that his mental condition was not remedial and thus it was error for the ALJ to find that he willfully refused to seek psychiatric treatment when that treatment would be futile.

This argument is also unpersuasive in light of the record. Drs. Sinha and Schwab, who were both psychiatrists, recommended specific psychiatric treatment that they felt would improve Plank's condition. They would not have prescribed treatment if they felt his condition would not improve.

Plank further argues that he did not have the mental capacity to understand and appreciate the need for psychiatric treatment.

This argument is also without merit and goes against the weight of the evidence. Diagnostic testing indicated that Plank's intelligence ranks highest in judgment and memory. Plank also testified that he would refuse other medical treatment for his medical condition even if recommended by a doctor. This attitude cannot serve as an excuse for the refusal of treatment.

Finally, Plank asserts that he had no notice or knowledge that the Secretary was alleging that the issue of failing to follow prescribed medical treatment would be before the Administrative Law Judge. Consequently, he had no opportunity to submit evidence on this matter.

We also find this argument to be unpersuasive. The ALJ issued his decision on August 31, 1981. Plank has offered no evidence on the issue of his failure to follow prescribed medical treatment since the ALJ's decision. Such an omission indicates that there probably is no evidence to be offered.

The scope of our review is limited to whether the decision of the Secretary is supported by substantial evidence. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.1976). Our review of this record discloses that there is substantial evidence to support the Secretary's decision. Accordingly, the decision of the district court is affirmed.