64 F.3d 662
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frank A. DeNICOLO, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-1423.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1995.
 
 Before: BOGGS, SILER, and GIBSON,* Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Frank DeNicolo appeals an order granting summary judgment to Defendant-appellee, the Secretary of Health and Human Services. The order affirmed the Secretary's determination that DeNicolo is not disabled. For the reasons set out below, we affirm.
 
 
 2
 * On August 24, 1990, DeNicolo applied for disability benefits, alleging that a nervous depressive disorder kept him from performing his job as a supervisor for General Motors. The state agency denied both his initial request and request for reconsideration. DeNicolo appealed to an Administrative Law Judge (ALJ), who ruled that DeNicolo was no longer able to perform his job as factory supervisor, but could perform many other jobs in the national economy, and was therefore not disabled. The administrative Appeals Council denied DeNicolo's request for review of the ALJ's decision. Therefore, the ALJ's decision became the decision of the Secretary. DeNicolo sued in district court, but the court granted summary judgment in favor of the Secretary.
 
 
 3
 DeNicolo is approximately sixty-two years old. He worked for General Motors for forty-one years, concluding his career as a supervisor of skilled tradespeople. His job included scheduling and distributing work, payroll paperwork, writing daily reports, and disciplining workers. DeNicolo stopped working in January 1990 due to his mental condition.
 
 
 4
 On January 10, 1990, DeNicolo was hospitalized for treatment of a depressive disorder. After his release, he continued outpatient treatment with Dr. Wayne Swart. Dr. Swart's notes indicate that DeNicolo was depressed, anxious, nervous, irritable, and agitated, and that he was bothered by feelings of guilt and worthlessness.
 
 
 5
 On February 28, 1991, Dr. Swart indicated that DeNicolo's condition had not improved and that he was "suffering from a major depressive disorder with anxiety." Furthermore, on January 13, 1992, Dr. Swart noted that DeNicolo "had poor interpersonal relations, had given up on many of his hobbies and activities, had intense anxiety, sleep disturbance and appeared to be undergoing considerable depression." Swart also completed a Psychiatric Review Technique Form in which he stated that DeNicolo was "suffering from an affective disorder, characterized by anhedonia or pervasive loss of interest in almost all activities; sleep and appetite disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking."
 
 
 6
 Although Dr. Swart reported in January 1991 that DeNicolo's response to treatment had been "fair and uneven," by January 1992, Swart noted that DeNicolo's condition had improved with treatment. DeNicolo had been borderline suicidal when he first saw Swart, but by January 1992 no longer felt this way, although he was still depressed. Furthermore, according to Dr. Swart, much of DeNicolo's depression stemmed from his particular job at GM, and his attitude improved once GM offered him early retirement. Dr. Swart's notes also indicate that anti-depressant medication helped DeNicolo, but he frequently failed to take it. Swart's notes also show that DeNicolo had not followed the doctor's recommendations that he lose weight, exercise, and increase his social and physical activities. Finally, on the Psychiatric Review Technique form, Dr. Swart said DeNicolo had only "moderate" limitations with respect to daily activities and social functioning and noted that DeNicolo "often" had deficiencies of concentration, persistence and pace.
 
 
 7
 The State Bureau of Disability Determination ("State Agency") had two of its psychiatrists evaluate DeNicolo's condition -- Dr. Graydon Forrer and Dr. Gordon Forrer. They concluded that DeNicolo had moderate difficulty maintaining social functioning and experienced "deterioration or decompensation" in work settings once or twice. The doctors also found that DeNicolo had "moderate" limitations in performing within a schedule, being on time, completing a normal work day, accepting instructions and responding appropriately to criticism, getting along with co-workers, and setting realistic goals.
 
 
 8
 Gordon Forrer found DeNicolo to be depressed and obsessive-compulsive with irritability and confrontationalism. Forrer found DeNicolo to be "moderately" impaired in thirteen out of twenty "categories" of social and occupational functioning. Forrer also determined that DeNicolo's energy and vigor were not well directed and that his communication skills were "borderline adequate."
 
 
 9
 The State Agency had a psychologist and psychiatrist review the record and comment on DeNicolo's condition. They concluded that DeNicolo could perform jobs with simple instructions and tasks. They found only slight restrictions in DeNicolo's daily activities and "moderate" difficulties in some areas of social functioning, but found he "seldom had difficulties with concentration, persistence, and pace ...." Like Dr. Forrer, they rated DeNicolo in twenty functional areas. The psychologist found DeNicolo to be limited in five out of twenty functional areas, and the psychiatrist found DeNicolo limited in only four areas.
 
 
 10
 DeNicolo testified at the hearing that he had suicidal thoughts and felt "stressed-out" by family and financial problems. He testified to a loss of sleep, frequent loss of temper due to frustration, and guilt over family problems. However, DeNicolo owns and maintains various rental properties. He claimed that, due to his illness, he spends only two to three hours per month managing his properties. He takes care of checks and receipts and must ready vacant houses for rental. DeNicolo testified that, although he has time to work on the properties, he has accomplished little because every time he begins repairs or maintenance he becomes disgusted and goes home. Therefore, the properties have remained vacant.
 
 
 11
 The record shows that DeNicolo recently prepared two properties for sale, which involved painting, fixing faucets and some plumbing, and fixing electrical wiring, involving approximately forty hours of work. DeNicolo's tax information shows he spent about $8,000 on repairs and $735 on travel with respect to his rental properties in 1990. There is no evidence that DeNicolo hired someone else to work on the properties.
 
 
 12
 A vocational expert (VE) testified at the hearing. According to the VE, DeNicolo had obtained "highly marketable" skills from his old job, such as keeping records, following written orders, keeping time records, and distributing work. The VE testified that these skills would transfer to a semiskilled job, for example, the job of timekeeper, which would be less stressful than DeNicolo's old job. There were about 4,200 timekeeper jobs in DeNicolo's local region (the lower 2/3 of Michigan's lower peninsula), and timekeeper jobs represented 4% of all jobs in the nation. The VE testified that a timekeeper job involved only mild to moderate stress, and that DeNicolo's work skills would transfer to the job "with little to no vocational adjustment."
 
 
 13
 The Secretary maintains that DeNicolo's condition does not limit his daily activities. He maintains his rental properties. He cooks, shops, takes care of his elderly mother by working on her farm, cares for his mother by giving her medication and feeding her, reads, watches TV, and attends church. Since he allegedly became disabled, he has worked on rebuilding a porch on his home and has almost completed the project. Finally, he has traveled and restores old cars. The Secretary contends these factors lead to the conclusion that DeNicolo is not disabled.
 
 II
 
 14
 Judicial review of the Secretary's decision is limited to determining whether substantial evidence supports the Secretary's findings and whether the Secretary employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). If supported by substantial evidence, the Secretary's decision must be affirmed, even if a reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam), and even if substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).
 
 
 15
 It is settled that "the ultimate determination of disability rests with the Secretary, not with the treating doctor." Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). However, while the treating physician's opinion does not bind the ALJ, the ALJ must set forth in his decision the reason or basis for rejecting the opinion. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987).
 
 
 16
 Dr. Swart is alone in concluding that DeNicolo's condition left him disabled. In fact, his later pronouncements contradict his earlier conclusion. While Swart stated to GM in February 1991 that DeNicolo was disabled, his later report in January 1992 did not contain any such conclusion. Furthermore, Swart's opinion is contradicted by the other doctors who found less severe mental limitations and, to some degree, by Swart's own statements. Swart's finding that DeNicolo had moderate limitations of daily activities and social functioning, and often had failures of concentration, persistence, and pace, does not prove a condition severe enough to be disabling. 20 C.F.R. Sec. 404.1520a(b)(3). Therefore, substantial evidence supports the Secretary's decision to accord less weight to Swart's determination that DeNicolo's condition rendered him completely disabled. See Loy v. Secretary of HHS, 901 F.2d 1306, 1308-09 (6th Cir. 1990)(citing Hardaway v. Secretary of HHS, 823 F.2d 922, 927 (6th Cir. 1987)); see also 20 C.F.R. Sec. 404.1527(d)(2).
 
 
 17
 The ALJ also found that DeNicolo's testimony was less than credible. While the ALJ cannot rely solely on demeanor at the hearing where there is uncontroverted evidence to support the testimony, see Harris v. Heckler, 756 F.2d 431, 436 (6th Cir. 1985), credibility determinations rest with the ALJ, see Siterlet v. Secretary of HHS, 823 F.2d 918, 920 (6th Cir. 1987)(per curiam). In this case, the ALJ specifically declined to credit fully DeNicolo's testimony about the severity of his condition.
 
 
 18
 Substantial evidence supports this decision, given the reasons advanced by the ALJ. In particular, the ALJ cited Denicolo's ability to run several rental properties. While DeNicolo maintained that he only spent several hours a month working on theses properties the ALJ noted that he declared almost $9,000 in various expenses related to the operation of these ten properties. The ALJ found the extent of work done on the property as disclosed on the tax returns to contradict DeNicolo's claim to work only two or three hours a month. Similarly, the ALJ noted that DeNicolo had gone on a one-week cruise and had also taken several other vacations. Furthermore, The ALJ did not completely disregard DeNicolo's testimony. In fact, the ALJ found that he could no longer perform his old job, as DeNicolo contended. Instead, the ALJ merely found that DeNicolo was less than credible about his ability to return to some other work. Contrary to DeNicolo's allegations, the decision by the ALJ to accord less than full credence to DeNicolo's testimony is reasonable in light of the substantial evidence supporting it.
 
 
 19
 The final issue raised by DeNicolo is his contention that while the VE was correct that his skills might transfer to the job of timekeeper, the VE never considered the effect of his mental limitations on his ability to do the job. DeNicolo states that "a hypothetical question which asked the vocational witness to consider the restrictions and limitations described by Mr. Denicolo in his testimony yielded a response that he could not perform any work." However, this argument is flawed.
 
 
 20
 DeNicolo is correct that the ALJ did not consider all of the limitations DeNicolo described, because the ALJ considered them less than credible. Similarly, the ALJ did disregard, to a degree, the reports and testimony of Swart because, again, he found them to overstate the problem. As we have already stated, there is substantial evidence to support the ALJ's decision to do both. Similarly, there is substantial evidence to support the ALJ's determination that DeNicolo could work as a timekeeper. In particular, he found that DeNicolo had no restrictions of activities of daily living, and slight restrictions with respect to difficulties in maintaining social functioning. Finally, he found that DeNicolo "often" had deficiencies of concentration, persistence and pace. Each of these types of limitation fails to satisfy the listings for disability. 20 C.F.R. Sec. 404.1520a(b)(3).
 
 
 21
 The only standard that DeNicolo met was for "episodes of deterioration or decompensation." The ALJ found this to be "repeated" (more than three times). See 20 C.F.R. Sec. 404.1520a(b)(3). However, the judge also noted that the cause of this was DeNicolo's refusal to follow his medication plan and his unwillingness to make the lifestyle and therapeutic modifications requested by his doctor (e.g. losing weight, etc.). See, e.g., Planck v. Secretary of HHS, 734 F.2d 1174, 1176 (6th Cir. 1984) (per curiam).
 
 
 22
 The judge refused to accord full credence to the opinions of Dr. Swart and to the testimony of DeNicolo. Substantial evidence supports each of these decisions. Furthermore, substantial evidence supports the ALJ's decision that DeNicolo could perform the job of timekeeper.[2]
 
 III
 
 23
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [2]
 DeNicolo also contends that the district court should have stricken the Secretary's pleadings under Local Rule 11.1(b). This claim is meritless. The rule clearly states that the judge "may" enter judgment against the defaulting party, not that judge "must" or "shall." Therefore, the decision to accept the pleadings, which the Secretary apparently filed two weeks late, was within the discretion of the trial judge. There was no abuse of discretion in this case. Other than being unable to secure an "easy win," DeNicolo never describes any prejudice caused by the Secretary's delay