Tricia L. BOYETT (Beine),
Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.

No. 00–5561.

United States Court of Appeals,
Sixth Circuit.

April 24, 2001.

Before KENNEDY, and SUHRHEINRICH, Circuit Judges, and McKEAGUE,* District Judge.

KENNEDY, Circuit Judge.

Plaintiff Tricia L. Boyett filed an application alleging disability and claiming social security benefits on October 27, 1995. An Administrative Law Judge (ALJ) denied her claim and the district court affirmed the denial based on the magistrate judge's report and recommendation. Plaintiff now appeals, alleging that the ALJ's analysis was not supported by substantial evidence and that new material evidence supports remand under sentence six of 42 U.S.C. § 405(g). We affirm the

judgment of the district court and dismiss plaintiff's petition for social security benefits.

I.

Plaintiff was born on August 22, 1972 and graduated from high school on May 23, 1990 with a cumulative GPA of 1.667. She was referred to a mental health specialist as a child on three different occasions in 1981, 1984 and 1985. Plaintiff states that between 1990 and 1996 she worked at approximately twelve jobs, including hotel housekeeper, fast food worker, sales clerk, cashier and assembler, and that she was fired from approximately ten of those job for being too slow or inaccurate. She last worked in March 1996 at the Comfort Suites as a housekeeper, but she quit her job there because "they were constantly onto me about certain things that I had done ... [and] I was slow in the process of trying to get things done." (J.A. 41.)

Plaintiff has alleged disability due to borderline intellectual functioning, dyslexia, attention deficit disorder, obesity, and problems standing on her feet. Plaintiff was evaluated in February 1992 by Pam Haines, a psychologist. Plaintiff tested with a full scale IQ of 79 and performance levels of approximately sixth to seventh grade level. Haines performed a MMPI–2 test on plaintiff but concluded that the resulting MMPI profile substantially underestimated plaintiff's psychological maladjustment. Haines concluded in her report that:

A psychiatric evaluation for differential diagnosing appears necessary in this case.... Tricia is probably functioning within the lower limits of the Low Aver-

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

age range intellectually and academically. However, the psychiatric overlay makes it questionable whether Tricia is capable of successfully completing even vocational school. Tricia has emotional problems and personality traits which if untreated will continue to cause her social and occupational difficulties.

(J.A. 185.) In March 1992, plaintiff was evaluated by Dr. David Meyer, a psychiatrist. Meyer concluded that plaintiff had residual type Attention Deficit Disorder and recommended counseling for interpersonal difficulties. Meyer stated the following in his report:

I find no evidence of any major psychiatric disorder at this time based on one interview. I could be mistaken but I believe perhaps that the psychological testing especially the MMPI has over read pathology.

... Agree with Pam Haines, likely has developmental disorder.

...

I do not believe the patient's residual symptoms of ADD are severe enough presently to merit a trial of psycho stimulant medication.... I believe she would benefit from ongoing counseling with a therapist to help her work through and work on interpersonal difficulties which she appears to have in previous sites of employment.

(J.A. 187.) In January 1996, a state medical consultant, Dan Vandivier, Ph.D., a psychologist, reviewed plaintiff's medical records. Vandivier concluded that:

Claimant has the ability to:

A) understand, carry out, and remember simple instructions.

B) make simple work related decisions.

C) respond appropriately to supervision, coworkers and work situations.

D) deal with changes in routine work setting.

(J.A. 101.)

In October, 1996, Judy Smith MN–CS, a registered nurse, examined plaintiff and diagnosed recurrent Major Depressive Disorder, Attention–Deficient/Hyperactivity Disorder—not otherwise specified, and Borderline Personality Disorder. (J.A. 221.) In November 1996, plaintiff was examined by Bruce Amble, Ph.D., at the request of the Kentucky Division of Disability Determinations. Amble tested plaintiff, but due to problems administering the test, Amble concluded that the test results were "probably invalid" and likely reflected "uncooperativeness, faking bad, [or] testing resistance." (J.A. 230.) Amble did comment, however, that:

Under formal testing conditions, the client understood simple instructions and responded thoughtfully. Concentration and motivation were adequate for formal testing. She was able to shift from task to task without difficulty and generally was persistent in her efforts. Self-correction was noted and her work was basically organized. Her frustration tolerance tends to be marginal. She gives up rather quickly on some of the more difficult tasks. Her work style was alert and active.

In plaintiff's disability report, she stated that she is unable to work because:

I am nervous, anxious and have crying spells. I can't concentrate if someone is around. I can't deal with crowds or being rushed. I can't hold a job, I get confused and I can't seem to understand what is expected of me. My leg hurts me if I stand for long. I can put up a good front for short time, but I can't do work required in a job to the satisfaction of the employer.

(J.A. 208.) Plaintiff also stated that she could do simple cooking if no one distract-

ed her, wash dishes, shop for groceries if there are not too many people around and there are no problems at the checkout, and that she drives every day but gets lost easily and sometimes has to pull the car off the road if other cars get too close to her.

At the hearing before the ALJ, plaintiff alleged primarily mental impairments, but testified as to alleged physical impairments as well. Plaintiff's attorney admitted, however, that during the orthopedic evaluation in July 1996 by the Social Security Administration, Dr. James Donley "basically didn't find anything wrong [with plaintiff]." (J.A. 36.)

Dr. Gilliam, the medical expert, prepared the standard medical assessment form evaluating plaintiff's ability to do work-related activities. Dr. Gilliam noted only "slight" and "moderate" limitations on plaintiff's ability to perform the work-related tasks. (J.A. 308–09.) Dr. Gilliam also testified at the hearing. In response to the ALJ's questions, Gilliam testified that plaintiff suffered from no restriction of activities of daily living, had moderate difficulties in maintaining social functioning, often had deficiencies of concentration and had one or two episodes of deterioration. When asked to treat plaintiff's contemporaneous testimony at the hearing as truthful, Gilliam testified that "with her testimony she basically is unable to even do the things that she has indicated on the last exhibit. I think therein is the difference; . . . she indicates some social facility being intact there on that exhibit, but her testimony this morning is that there's not much of that intact." (J.A. 54.) Thus, Gilliam testified that, if he were to take plaintiff's testimony at full face value, he would increase his findings to marked difficulties in maintaining social function, frequent deficiencies of concentration and re-

peated episodes of deterioration. (J.A. 55.)

Next the vocational expert, Lowell Latto, testified before the ALJ. In response to the ALJ's hypothetical describing the plaintiff, Latto testified that a similar hypothetical plaintiff could perform plaintiff's past work. When the ALJ then asked Latto to give plaintiff's testimony at the hearing full credibility, Latto testified that assuming plaintiff's testimony were true, all past work and other work would be precluded and the only acceptable work environment would be a sheltered workshop situation. (J.A. 59.)

In his opinion, the ALJ acknowledged and reviewed the medical evidence submitted, plaintiff's own statements about her condition and the testimony provided at the hearing. The ALJ relied in particular on the opinions of the medical advisor at the hearing, Dr. Gilliam, and the vocational expert, and made the following findings:

1. The claimant met the disability insured status requirements of the Act since November 30, 1994, the date she alleges her disability began and continued to meet them through June 30, 1994.

2. The claimant has not engaged in substantial gainful activity since November 30, 1994.

3. The medical evidence establishes that the claimant suffers from borderline intellectual functioning which causes more than a slight abnormality, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Ms. Boyett's testimony was not credible.

5. The claimant has the residual functional capacity to perform the requirements of work except for work over the medium level of exertion limited by her borderline intellectual functioning with

reading at 7th grade level (20 CFR 404.1545 and 416.945).

6. The claimant retains the residual functional capacity to perform her past relevant work as a Cashier or in Food Preparation.

7. The claimant has the residual functional capacity to perform a wide range of medium work (20 CFR 404.1567 and 416.967).

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(e) and 416.920(e)).

(J.A. 20.) The ALJ thus concluded that plaintiff was not entitled to a period of disability or disability insurance benefits. The district court affirmed the ALJ's decision based on the report and recommendation of Magistrate Judge W. David King. Plaintiff now appeals that ruling, alleging that the ALJ's decision was not supported by substantial evidence, and that new, material evidence requires this court to remand the case.

## II.

The magistrate judge employed the correct standard of review, explaining that the court is:

> [L]imited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision.... In determining whether the Commissioner's findings are supported by substantial evidence, the Court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight.

(Mag.Op.2.) Plaintiff points to the testimony and reports of Dr. Amble, Pam Haines, Cindy Owen and Judy Smith to rebut the ALJ's findings. As the magistrate judge correctly concluded, however, that evidence is not inconsistent with Dr. Gilliam's RFC. In addition, the magistrate correctly concluded that even if some of that evidence conflicted with the RFC calculated by Dr. Gilliam, the ALJ was entitled to rely more heavily on Dr. Gilliam, the medical advisor, than on other consultative examiners. *See Barker v. Shalala,* 40 F.3d 789 (6th Cir.1994).

■ Plaintiff argues that the ALJ erred in concluding that social workers are not acceptable medical sources. The regulations cited by the ALJ, however, clearly outline who can be an acceptable medical source and social workers are not included. 20 C.F.R. §§ 404.1513(a), 416.913(a). The ALJ correctly acknowledged that reports from social workers can be considered as additional evidence of a claimant's ability to work. 20 C.F.R. § 404.1513(e).

As a separate issue, the ALJ incorrectly stated in his opinion that Pam Haines was a social worker (J.A. 18) rather than a psychologist. The ALJ thus incorrectly concluded that Haines was not an acceptable medical source under 20 C.F.R. § 404.1513(a)(3) and that her report could be considered only "for additional information." (J.A. 19.) We find, however, that any error committed by the ALJ was harmless. Haines' report ultimately concluded with a recommendation that "a psychiatric evaluation ... appears necessary in this case." (J.A. 185.) After Haines' evaluation, plaintiff was evaluated by a psychiatrist, Dr. David Meyer, and Dr. Meyer's report was given appropriate weight by the ALJ. Thus, although the ALJ should have treated Haines as an acceptable medical source, we conclude that the ALJ's error did not result in any prejudice to plaintiff and that the error was, therefore, harmless.

Finally, the magistrate judge correctly held that the ALJ's credibility determinations are entitled to deference on judicial review. No reasonable basis has been presented to overturn the ALJ's determination that plaintiff's testimony was not credible. Thus, the ALJ did not err by relying on those conclusions of Dr. Gilliam that did not give weight to plaintiff's testimony at the hearing.

In response to plaintiff's request for a remand based on new and material evidence, the magistrate judge correctly explained that:

> [The] Court has jurisdiction to remand the case to the Commissioner without entry of judgment for consideration of any "new evidence which is material" if "there is good cause for the failure to incorporate such evidence into the record" as of the date of the Commissioner's final decision. 42 U.S.C. § 405(g), sentence six.... Evidence is "material" if there is a "reasonable probability that the 'Commissioner' would have reached a different disposition" if such evidence had been presented.... [I]n order to show "good cause" for failure to obtain evidence prior to rendition of the final decision, the movant must give a "valid reason."

(Mag.Op.3.) Plaintiff has not demonstrated that any new evidence she wishes to submit is material or that there was good cause for the failure to submit it earlier. Thus, the magistrate correctly dismissed this argument.

### III.

In sum, we affirm the judgment of the district court. Plaintiff's claim is dismissed.