NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0724n.06

No. 08-4706

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 18, 2010**
LEONARD GREEN, Clerk

LASHAWNA PAYNE,                                )
                                               )
        Plaintiff-Appellant,                   )        ON  APPEAL  FROM  THE
                                               )        UNITED  STATES  DISTRICT
        v.                                     )        COURT FOR THE  SOUTHERN
                                               )        DISTRICT OF OHIO
COMMISSIONER OF SOCIAL SECURITY,               )
                                               )
        Defendant-Appellee.                    )
                                               )

BEFORE:  GRIFFIN and WHITE, Circuit Judges; and MURPHY, District Judge.[*]

        GRIFFIN, Circuit Judge.

        Plaintiff LaShawna Payne appeals the Social Security Commissioner's denial of her

application for Social Security Disability Insurance Benefits.  The administrative law judge (ALJ)

found that Payne was not disabled within the meaning of the Social Security Act and therefore

denied her claim for benefits.  After Payne filed a complaint seeking review of the ALJ's ruling in

the district court, a magistrate judge filed a report and recommendation (R & R) to (1) reverse the

denial of benefits on the ground that the ALJ's decision was not supported by substantial evidence,

and (2) remand the case to the ALJ with instructions to immediately award Payne benefits.  The

Commissioner filed objections to the R & R, and the district judge sustained the objections, declined

_____

        [*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District
of Michigan, sitting by designation.

to adopt the magistrate judge's R & R, and affirmed the ALJ's denial of benefits. Plaintiff

LaShawna Payne timely appeals. After thorough review, we affirm.

I.

Plaintiff bears the burden of proving the extent of her impairments so as to qualify for

disability benefits. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); 20 C.F.R. §

404.1520(a)(4). "This court must affirm the [Commissioner of Social Security's] conclusions unless

the Commissioner failed to apply the correct legal standard or made findings of fact that are

unsupported by substantial evidence." *McLanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th

Cir. 2006). 42 U.S.C. § 405(g) mandates: "The findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

"Substantial evidence is more than a scintilla of evidence but less than a preponderance and

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*McLanahan*, 474 F.3d at 833 (citation omitted). In other words, the evidence "'must be enough to

justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn

from it is one of fact for the jury.'" *LeMaster v. Sec. of Health & Human Servs.*, 802 F.2d 839, 840

(6th Cir. 1986) (per curiam) (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292,

300 (1939)). The Commissioner's findings may not be reversed "merely because there exists in the

record substantial evidence to support a different conclusion . . . . This is so because there is a zone

of choice within which the Commissioner can act, without the fear of court interference."

*McLanahan*, 474 F.3d at 833 (citations and internal quotation marks omitted). This court reviews questions of law de novo. *Id*.

II.

The dissent would remand to the Commissioner for reconsideration of the weight given to the opinion of Ernesto Tan, M.D. and, if Dr. Tan's opinion is not given controlling weight, "good reasons" for its rejection. We respectfully disagree.

First, a remand for reconsideration of the weight given Dr. Tan's opinion is a futile and superfluous exercise because the ALJ correctly determined (expressly and implicitly) that Dr. Tan's opinion regarding Payne's psychological limitations is not well supported, is inconsistent with the evidence of record, and is thus not entitled to controlling weight; Payne concedes as much. The second proposed instruction concerns an issue that was not raised or argued by the parties and should therefore not be considered by this court. Even if it were considered, we disagree that the ALJ did not supply good reasons for refusing to give controlling weight to Dr. Tan's opinion that Payne was unable to work, and we agree with the district judge that substantial evidence supports the ALJ's denial of benefits.

Regarding the first proposed remand instruction, the ALJ stated:

> The Administrative Law Judge rejects Dr. Tan's opinion that the claimant is unable to work or sustain work activity based on the combination of her physical and mental impairments because the objective evidence and his treatment notes do not support the limitations he reported.

The ALJ's findings thus make clear that she did not give Dr. Tan's opinion controlling weight. Payne concedes this. *See* Appellant's Br. 12 ("The ALJ and the District Judge erred in the weight

give[n] to Dr. Tan[.]"); 17 (The Administrative Law Judge and the District Judge erred in not giving Dr. Tan the most weight[.]"). A remand would merely operate as an order to reconsider and would not resolve the dispute.

Regarding the second proposed remand instruction, Payne did not raise as an issue or argue in her appellate brief that the ALJ failed to provide good reasons under 20 C.F.R. § 404.1527(d)(2) for refusing to give controlling weight to Dr. Tan's opinion; rather, Payne merely disagrees (in a single paragraph) with the reasons *provided* by the ALJ. Thus, the issue raised sua sponte by the dissent is forfeited. Moreover, as discussed below, we submit that the ALJ provided good reasons sufficient to satisfy the substantial evidence standard.

If the un-raised and un-argued issue of whether the ALJ gave "good reasons" under 20 C.F.R. § 404.1527(d)(2) for refusing to give controlling weight to Dr. Tan's opinion is not forfeited, the applicable law is as follows: Even where a reviewing court finds that substantial evidence supports the ALJ's decision, the agency's regulations require the ALJ to give "good reasons" for a decision not to give controlling weight to a treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). In *Wilson*, this court explained the purposes underlying the "good reasons" rule:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

- 4 -

*Wilson*, 378 F.3d at 544 (internal citations and quotation marks omitted). If the ALJ fails to give good reasons for rejecting the opinion of a treating physician, the error is reversible and requires a remand for further proceedings, unless the error is harmless. *Id.* at 544-46.

As an initial matter, the ALJ's rejection of Dr. Tan's opinion that Payne "is unable to work and endure work related stress" was not, as a matter of law, improper. The applicable regulations provide that a statement by a medical source that the claimant is "unable to work" is not a "medical opinion"; rather, it is an opinion on an "issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e) & (e)(1). Accordingly, Dr. Tan's opinion that Payne could not work is, as a matter of law, "not give[n] any special significance . . . ." *Id*. at (e)(3).

Under 20 C.F.R. § 416.927(d)(2), a treating physician's opinion is entitled to controlling weight only if it "is not inconsistent with the other substantial evidence in [the] case record." In the present case, the ALJ explained that "the objective evidence and [Dr. Tan's] treatment notes do not support the limitations he reported." Those findings are supported by substantial evidence.

As the district court observed, not only was "Dr. Tan's opinion that Plaintiff is disabled by her history of pulmonary embolism [] in conflict with his own report to the Rehabilitative Services Commission that she 'has no significant limitations from her pulmonary status' and no cardiac limitations[,]" but "[i]n the same report, Dr. Tan [also] stated that Plaintiff was only *moderately*

*limited* as a result of her depression, a conclusion consistent with that of the consulting psychologists."[1] (Emphasis added.) Payne ignores both of these observations.

In addition, the district court found – and Payne also does not challenge in this appeal – that the ALJ "accurately noted that [Dr. Tan's] opinion is not supported by any office notes or other objective evidence in the record." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by . . . documentation.") (citation and internal quotation marks omitted).

Lending further support to the ALJ's refusal to give controlling weight to Dr. Tan's opinion are the ALJ's findings that: (1) "[o]ther than being on anti-anxiety medications, there is no record of *current* psychological treatment"; (2) "there is some question of compliance as Dr. Nix indicated"; (3) "the claimant was terminated from psychiatric treatment at Core Behavioral Health Center after several missed appointments"; and (4) "as of July 18, 2003, the claimant's primary complaints were *physical* in nature."[2] (Emphasis added.) The ALJ noted Dr. Nix's report that Payne "does not like to take her anti-anxiety medication because it causes her to gain weight." Like the other findings, Payne fails to address these findings in her appellate brief, let alone argue that they were erroneous.[3]

---

[1] The findings of the consulting and state agency examiners are set forth in detail on pages 6 - 8 and 10 - 12 of the district court's opinion and in appellee's brief.

[2] Payne does not appeal the ALJ's ruling, affirmed by the district court, that she is not physically disabled; rather her "appeal focuses on her mental and nervous impairments."

[3] The dissent notes that Payne failed to introduce records that she was currently undergoing regular counseling.

The ALJ also found that Payne's allegations regarding the degree of her limitations were not credible. The ALJ's credibility findings are unchallengeable, *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony") (alteration omitted), or they "are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton*, 246 F.3d at 773; *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence."). In the present case, the ALJ found that, although Payne

> reported being in chronic pain and needing to elevate her legs four or five times a day for 30 minutes at a time, [] her activities of daily living, such as being able to do basic household chores, go grocery shopping, attend church weekly, and drive at least four times a week, are inconsistent with the alleged severity of her pain. None of her doctors have advised she must elevate her legs as she reported. At the hearing, the Administrative Law Judge carefully observed the claimant and notes she exhibited no signs of obvious pain or discomfort when walking into or out of the hearing room or while sitting during the course of the hearing. Although the claimant alleged mental impairments, she related well to the Administrative Law Judge and to her representative at the hearing and she answered questions quickly and appropriately without evidence of a memory or concentration problem. There was no evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing.

The ALJ's adverse credibility determination is supported by substantial evidence. *See Buxton*, 246 F.3d at 775 (affirming ALJ's ruling that claimant was not disabled where claimant's "own accounts of her activities and limitations were also conflicting. For instance, she shops for herself, does light cleaning, cooks for herself, drives herself places (including numerous doctors' visits), and exercises

daily (thirty minutes of walking without post-exertional collapse), but cannot work"); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (holding that substantial evidence supported ALJ's finding that claimant's "subjective assessment of pain [was] only partially credible because the record indicated that he was not taking prescribed pain medication and because his own assessment of his daily activities indicated that his pain was not disabling" where he "testified, consistent with the objective medical evidence, that he could manage his personal hygiene, pick a coin off a table, vacuum, drive short distances, and wash spoons and forks."); *see also* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we will consider . . . your . . . prescribed treatment, daily activities, efforts to work, . . . .").

Although Payne contends that her failure to follow through with medical treatment may "be a symptom of a mental disorder" and cites *White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009) in support, Payne's reliance upon *White* is misplaced. *White* held:

> [I]n this case there is no evidence in the record explaining White's failure to seek treatment during this half-year gap. A "reasonable mind" might therefore find that the lack of treatment during the pre-November 4, 2002 time frame indicated an alleviation of White's symptoms. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (describing the substantial-evidence standard) (citation omitted).

*White*, 572 F.3d at 284; *see also Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("Though Moon claims that his depression and obsessive compulsive disorder are disabling, his medical history reveals only sporadic psychiatric visits that were often separated by years. Similarly, though various medications exist, the claimant chose to forego drug therapy due to the possible side effects."); *Plank v. Sec. of Health & Human Servs.*, 734 F.2d 1174, 1176 (6th Cir. 1984) (holding

that claimant's "attitude" in refusing psychiatric treatment "cannot serve as an excuse" entitling him

to disability benefits).  Payne's argument also contravenes 20 C.F.R. § 404.1530, which provides:

> § 404.1530  Need to follow prescribed treatment.
>
> (a) What treatment you must follow.  In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
>
> (b) When you do not follow prescribed treatment.  If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

Payne does not assert an "acceptable reason" for her failure to follow her prescribed treatment under

§ 404.1530(c)(1)-(5):

> (c)  Acceptable reasons for failure to follow prescribed treatment.  We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment.  The following are examples of a good reason for not following treatment:
>
>> (1)  The specific medical treatment is contrary to the established teaching and tenets of your religion.
>>
>> (2)  The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
>>
>> (3)  Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
>>
>> (4)  The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)  The treatment involves amputation of an extremity, or a major part of an extremity.

In suggesting that the ALJ improperly discounted Dr. Tan's opinions about Payne's psychological limitations "solely because" Dr. Tan is not a psychologist or psychiatrist, the dissent mischaracterizes the ALJ's decision.  In fact, the ALJ's decision relied upon Dr. Tan's lack of specialization as one fact among several ("*Furthermore*, Dr. Tan is not a psychologist or a psychiatrist . . . ." (emphasis added)), and it was not error to do so after declining to give Dr. Tan's opinion controlling weight.  *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  The ALJ's comment that Dr. Tan's opinions about Payne's mental functioning "are outside his area of expertise" is more reasonably interpreted as an inartful attempt by the ALJ to address the (d)(5) factor giving more weight to specialists rather than as an indictment against Dr. Tan's qualifications to diagnose and treat Payne's psychological disorders.

The dissent's suggestion that Dr. Tan's opinion should have been given controlling weight because other mental health providers diagnosed Payne with depression and anxiety, except for Dr. Eggerman, who noted erroneously that Payne never attempted suicide (because Payne withheld that information from him) and had no family history of mental illness (other than alcohol abuse), is unpersuasive.  In fact, the ALJ *agreed* with Dr. Tan that Payne suffers from depression and anxiety, stating:  "[T]he Administrative Law Judge finds the claimant has . . . a depressive disorder, and an anxiety disorder."  The ALJ also acknowledged Payne's suicide attempt in 2001 ("She had also apparently overdosed on Excedrin.").  Indeed, the ALJ's finding that Payne's "limitations appear to

be mild to moderate at best" was consistent with *Dr. Tan's* own 2003 report that Payne was "moderately limited" because of her psychological disorders.

Contrary to the dissent's inaccurate conclusion that the ALJ gave "no weight" to Dr. Tan's opinion, these several consistencies between the ALJ's findings and the diagnoses of Dr. Tan demonstrate otherwise. The ALJ's finding that Payne's disabilities were so severe that she could work only at "medium and light work . . . . limited to routine, repetitive, object oriented tasks in a low stress environment with only occasional interaction with supervisors, co-workers, and the general public" that included jobs as an assembler, inspector, and packer/inspector, hardly qualifies as a wholesale rejection of Dr. Tan's opinions. The dissent's perception that the ALJ determined that "Dr. Tan's opinion should receive no weight" is therefore inaccurate. The ALJ simply disagreed with Dr. Tan's later conclusion in 2005 that Payne's psychological disorders were so severe as to render her unable to work. Significantly, Payne ignores the apparent inconsistency between Dr. Tan's 2003 and 2005 opinions, makes no attempt to explain it, and offered no evidence of changes in her condition that might have justified Dr. Tan's later opinion. *See Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (holding that ALJ's rejection of treating physician's opinion that the claimant lacked the capacity to perform light or sedentary work was supported by substantial evidence where the opinion was "inconsistent" with the treating physician's earlier evaluation, there were "no significant or specific changes in [the claimant's] overall condition between the dates of the [treating physician's] reports[,]" and a consulting examiner disagreed with the treating physician).

In summary, although substantial evidence could conceivably support Payne's entitlement to disability benefits, the opposite is also true: substantial evidence supports the denial of benefits. Unfortunately for Payne, that reality is fatal to her appeal. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.").

Payne raises two additional issues.

**1.  Whether the ALJ erred in failing to set out in narrative form how she determined Payne's residual functional capacity.**

Payne contends that the ALJ failed to explain how she determined her residual functional capacity, i.e. "what an individual can still do despite his or her limitations[,]" Social Security Ruling 96-8P, 1996 WL 374184 , at *2 (July 2, 1996), thereby failing to comply with a portion of the "narrative discussion requirements" of SSR 96-8p. The portion of the narrative discussion requirements at issue provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p.

Contrary to Payne's contention and the magistrate judge's ruling, we agree with the district

judge that "the ALJ did provide an extensive discussion of the evidence in arriving at Payne's mental

RFC." Specifically, the ALJ explained:

> With regard to her depression and anxiety, the claimant's limitations appear to be mild to moderate at best. As noted, the claimant was terminated from psychological treatment in December 2002 after she failed to keep several appointments (Exhibit 3F). On July 18, 2003, during the most recent consultative psychiatric evaluation, the claimant focused primarily on somatic symptoms. There was no evidence of psychomotor slowing, tearfulness, or affective distress. Thought processes were logical, coherent, and goal oriented. Her concentration was estimated as fair to good, and there was no evidence of suicidal or homicidal ideation (Exhibit 12F). Dr. Eggerman, the consultative psychiatrist, reported . . . only minimal to mild limitation in most areas of function. The claimant testified that she has been in treatment for seven years without improvement; however, there is no record of such ongoing treatment and on November 25, 2004, Dr. Nix reported that the claimant does not like to take her anti-anxiety medication because it causes her to gain weight (Exhibit 18F). She reported being in chronic pain and needing to elevate her legs four or five times a day for 30 minutes at a time, but her activities of daily living, such as being able to do basic household chores, go grocery shopping, attend church weekly, and drive at least four times a week, are inconsistent with the alleged severity of her pain. None of her doctors have advised she must elevate her legs as she reported. At the hearing, the Administrative Law Judge carefully observed the claimant and notes she exhibited no signs of obvious pain or discomfort when walking into or out of the hearing room or while sitting during the course of the hearing. Although the claimant alleged mental impairments, she related well to the Administrative Law Judge and to her representative at the hearing and she answered questions quickly and appropriately without evidence of a memory or concentration problem. There was no evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing.

> The Administrative Law Judge rejects Dr. Tan's opinion that the claimant is unable to work or sustain work activity based on the combination of her physical and mental impairments (Exhibits 9F; 18F) because the objective evidence and his treatment notes do not support the limitations he reported. Furthermore, Dr. Tan is not a psychologist or a psychiatrist and his opinions regarding the claimant's mental function are outside his area of expertise. Other than being on anti-anxiety medications, there is no record of current psychological treatment, there is some

question of compliance as Dr. Nix indicated, the claimant was terminated from psychiatric treatment at Core Behavioral Health Center after several missed appointments, and as of July 18, 2003, the claimant's primary complaints were physical in nature (Exhibits 3F; 12F; 18F).

In accordance with Social Security Ruling 96-6p, the Administrative Law Judge has also considered the opinions of state agency medical consultants and program physicians that the claimant has no severe physical impairment and only moderate limitations in mental function but finds her somewhat more limited for the reasons described.

In assessing the sufficiency of this narrative against the magistrate judge's finding that the narrative was insufficient, the district court stated:

The Court is uncertain what additional level of detail the ALJ could have included in her assessment of Plaintiff's mental RFC that Magistrate Judge Black found absent from her decision. Clearly, however, the ALJ explained how she determined Plaintiff's RFC beyond just the conclusory statement that it was "based on the medical evidence." The ALJ explained that Dr. Eggerman's opinion supports the conclusion that Plaintiff has only mild to moderate limitations in mental functioning and provided a basis for rejecting Dr. Tan's conflicting opinion. The ALJ discussed Plaintiff's activities of daily living and why they are inconsistent with her complaints of pain. Additionally, the ALJ's firsthand observations of Plaintiff support the RFC as well as Plaintiff's non-compliance with her treatment program. The only thing arguably missing from the ALJ's decision is a specific discussion of Plaintiff's ability to sustain work in an ordinary day, but it is implicit in her opinion that this ability is only moderately affected by Plaintiff's mental impairments.

The Court finds no error in the ALJ's application of SSR 96-8p in developing Plaintiff's mental RFC.

We agree with the district judge that the narrative is sufficient and that reversal or remand is not warranted.

Although Payne asserts that the ALJ could not have given significant weight to Dr. Eggerman's assessment because she did not adopt Dr. Eggerman's diagnosis of a somatoform

disorder, Payne cites no authority that it was unreasonable for the ALJ to accept Dr. Eggerman's opinion regarding Payne's current functioning, while declining to adopt his diagnosis. One's functioning is more closely linked to specific, observable, objective evidence, while a diagnosis encapsulates a broad range of symptoms. In the present case, there is no dispute about diagnosis; the issue is the degree of impairment and its effect on Payne's ability to work. Dr. Eggerman's opinions about the limits of Payne's functioning were consistent with those of consulting psychologist Dr. Spadafora and state agency psychologists Dr. Kadle, Dr. Melvin, and Dr. Stinson, all of whom opined that Payne could perform an appropriately modified range of work, despite her psychological disorders.

> 2. **Whether the ALJ erred in relying upon answers to an allegedly improper hypothetical question asked of the vocational expert.**

Finally, Payne argues that the hypothetical posed by the ALJ to the vocational expert omitted Payne's need for "extra breaks and extra days missed[,]" the limitations articulated by Dr. Tan and a case manager, and "the need for a supportive supervisor and the pace of work set out . . . by the reviewing psychologists for the Administration." Payne's contention is without merit.

In rejecting this argument, the district court explained:

> Plaintiff's statement of specific errors alleged that the ALJ's hypothetical to the vocational expert was improper because she failed to include limitations noted by Dr. Tan, Amity Brown, the case manager, or limitations noted by the consultative psychologists. Plaintiff also complains that the ALJ failed to include a limitation that she needs to elevate her legs four or five times a day.

> If the ALJ relies on a vocational expert's testimony in response to a hypothetical to conclude that the claimant is capable of performing a number of jobs, the hypothetical question must describe the claimant in all significant, relevant respects.

*Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994). For a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant. *Id*. The Court finds that the ALJ did not err in posing her hypothetical to the ALJ.

First, as already explained, the ALJ properly rejected the opinion of the [sic] Dr. Tan. Therefore, the ALJ was not required to include in her hypothetical any limitations indicated by Dr. Tan. *Infantado v. Astrue*, 263 Fed. Appx. 469, 476-77 (6th Cir. 2008). Second, the ALJ did not err in failing to include any limitations noted by Amity Brown, the case manager. Although they may constitute other evidence of the claimant's ability to work, social workers are not acceptable medical sources under Social Security regulations. *Boyett v. Apfel*, 8 Fed. Appx. 429, 434 (6th Cir. 2001); 20 C.F.R. § 404.1513(a). Third, the ALJ appropriately did not include a limitation that Plaintiff is required to elevate her legs four to five times a day because there is no medical evidence which shows this is required.

Fourth and finally, the ALJ's hypothetical accurately describes Plaintiff. In fact, it appears that the hypothetical essentially tracks Dr. Eggerman's opinion. As indicated above, Dr. Eggerman found that Plaintiff has the following limitations:

1.  Ability to understand and remember short, simple instructions and to carry out short simple instructions minimally limited.

2.  Ability to understand and remember detailed instructions and to carry out detailed instructions minimally limited.

3.  Ability to interact appropriately with the public and coworkers minimally limited and ability to interact with supervisors moderately limited.

4.  Ability to respond to work pressures moderately limited.

5.  Ability to respond appropriately to changes in routine work environment mildly to moderately limited.

AR 282. In comparison, the ALJ asked the vocational expert to assume a person of Plaintiff's age and education who is limited to routine, repetitive, object-oriented tasks with only occasional interaction with the public, coworkers and supervisors with the further limitation of a low-stress work environment. AR 372. This hypothetical fairly mirrors Dr. Eggerman's opinion and thus was clearly supported by the record.

Finally, the ALJ asked the vocational expert to assume that the hypothetical person could perform medium work. Substantial evidence supports this aspect of the hypothetical as well. As stated, even Dr. Tan opined that Plaintiff's pulmonary embolism and cardiac conditions imposed no physical limitations and that she is only moderately limited by back pain.

The ALJ made no vocational error in her hypothetical question to the vocational expert.

We agree with the district court's analysis and disposition of this issue.

III.

For these reasons, we affirm the judgment of the district court.

**HELENE N. WHITE, Circuit Judge** (dissenting). Because the ALJ failed to provide good reasons for rejecting the opinion of Payne's treating physician, I respectfully dissent.

When making an assessment of the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called "treating physician rule." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). An ALJ will give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion is not given controlling weight, the ALJ must still consider a variety of factors in determining what weight, if any, to accord the opinion. These include the length of the treatment relationship and frequency of examination, the physician's knowledge about the impairment(s), the amount of supporting evidence for the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether the physician is a specialist, and any other relevant factor. 20 C.F.R. § 404.1527(d)(2)-(6). Further, Social Security Ruling 96-2p states that the regulations "require[] that the adjudicator will always give good reasons in the notice . . . for the weight given to a treating source's medical opinion(s)." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In the instant case, there is no dispute that Dr. Tan was a treating physician. The majority concludes that Dr. Tan's opinion with regard to Payne's ability to work is not a medical opinion, and that his treatment notes are not in conflict with the ALJ's mental RFC determination. I believe that this takes Dr. Tan's treatment notes out of context, and minimizes their findings. Dictated one day

after his letter stating that Payne was unable to work, the notes indicate that Payne was moderately limited due to her depression. In addition to this moderate limitation, however, Dr. Tan noted that Payne had "significant anxiety and panic attacks" and an "inability to concentrate and relate to others." He also noted that her "concentration and persistence" were "not good." This is significantly more severe than the limitations described by the ALJ, who determined that Payne could perform "routine, repetitive, object-oriented tasks with only occasional interactions with supervisors, coworkers and the general public" in a "limited to a low-stress work environment." And, although the ALJ did accept that Payne suffered from depression and anxiety, her conclusions were not consistent with Dr. Tan's. The ALJ found that Payne's mental limitations were "mild to moderate at best." Dr. Tan's opinion was that Payne was unable to concentrate or relate to others, not that she had limitations surrounding those abilities. Further, it appears that the ALJ completely rejected Dr. Tan's opinion. The only evaluation of Dr. Tan's opinion stated that the ALJ "rejects Dr. Tan's opinion that the claimant is unable to work." The ALJ decision gives several reasons why it rejected Dr. Tan's opinion, but never states how, if at all, it considered his opinion with regard to Payne's mental limitations.

Having rejected Dr. Tan's opinion, the ALJ was required to give "good reasons" for the weight she placed on his opinion. In addition to the fact that the ALJ did not state how much weight Dr. Tan's opinion was accorded, the ALJ did not refer to or consider the factors set forth in 20 C.F.R.

§ 404.1527(d)(2)-(6) to determine how much weight should be given.[4] We have held that where an ALJ fails to provide the required "good reasons" for the weight given to a treating source opinion, a remand is appropriate, even if "substantial evidence otherwise supports the decision of the Commissioner." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999), for the proposition that courts should "continue remanding when we encounter opinions from ALJ's [sic] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."). In the instant case, the ALJ did not state the weight given to Dr. Tan's opinion, nor give good reasons for apparently according it no weight at all.

In *Wilson* we recognized that certain violations of the procedural requirement of 20 C.F.R. § 404.1527(d) could be harmless, including where: a treating physician's opinion is "patently deficient;" the Commissioner makes findings consistent with the physician's opinion; or the goals of the Section are met, i.e., "the provision of the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. None of these remediating elements are present here.

---

[4]The ALJ did state in explaining her rejection of Dr. Tan's opinion that "Dr. Tan is not a psychologist or a psychiatrist and his opinions regarding the claimant's mental function are outside his area of expertise." Specialization is a factor to consider, however, the ALJ's treatment of Dr. Tan's capabilities appears overly simplified. That Dr. Tan is not a mental health specialist does not render him incapable of diagnosing and treating common mental illnesses such as major depressive disorder and anxiety. Dr. Tan is a family medicine specialist. According to the American Academy of Family Physicians, the "diagnosis and treatment of mental illness in the individual and family context [is an] integral component[] of family medicine." AM. ACAD. OF FAM. PHYS., *Mental Health Care Services by Family Physicians* (2001), available at www.aafp.org/online/en/home/policy/policies/m/mentalhealthcareservices.html.

Dr. Tan's opinion is certainly not patently deficient. Every mental health provider who has treated Payne but one has diagnosed severe, recurrent, major depression. The one treater who failed to make such a diagnosis, Dr. Eggerman, relied on Payne's incorrect subjective account of her medical history. Most significantly, Dr. Eggerman noted that Payne reported that "she's never attempted suicide." This is plainly contradicted by undisputed medical records. *See, e.g.,* AR 324-26, University Hospital Consultation Form, 8/01/18 (listing the reason for consult as "suicide attempt"). Drs. Spadafora and Kadle's assessments, in contrast, found significant mental illness and both noted continuing suicidal ideation. While their evaluations differ slightly in degree from Dr. Tan's, they do not suggest that his opinion is patently deficient.

As described above, the ALJ's findings were not consistent with Dr. Tan's opinion, nor were adequate reasons provided by the ALJ for the dismissal of Dr. Tan's opinion. Thus the ALJ's failure to give good reasons for according no weight to Dr. Tan's opinion was not harmless error. Having failed to follow its own regulations, I would remand to the Commissioner to reconsider the weight given to Dr. Tan's treating source opinion.