NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0346n.06

No. 14-6299

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

May 08, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHERYL S. BROWN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |

**Before: COLE, Chief Judge; GILMAN and KETHLEDGE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Cheryl S. Brown applied for Social Security disability benefits on the basis that the side effects of the medications she takes to control her hypertension render her incapable of working. Brown's application was denied in the administrative and judicial proceedings below, but no adjudicator has squarely addressed her primary claim that she is unable to work due to the collateral consequences of her medications. For this reason, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

**I. BACKGROUND**

**A.     Medical history**

The basic facts of Brown's medical history are largely undisputed. Between June 2009 and October 2010, Brown struggled with hypertension. She made several visits to the

emergency room, she saw a panoply of doctors, and the doctors tried numerous medications in varying combinations and doses to try to bring Brown's blood pressure under control. Finally, by October 2010, the doctors hit on the right set of prescriptions, and Brown's blood pressure came down to within normal limits.

Unfortunately, the medications that are required to keep Brown's blood pressure in check have serious side effects with their own set of problems. The medications cause drowsiness that requires Brown to take one to two naps every day. Her medications also cause nausea, dizziness, and headaches. Because of these side effects, Brown's daily activities are substantially diminished from what they once were. She is no longer able to cook or clean without stopping to rest, she cannot participate in many of the recreational activities that she once enjoyed, and she rarely leaves her house for more than a few hours at a time. Brown has, however, retained her ability to run errands, such as taking her son to school, shopping for groceries twice a month, and sitting through her son's baseball games.

Before these medical complications, Brown had spent the vast majority of her working life as an accounting specialist. This was an administrative job requiring minimal physical exertion. But Brown has not worked since August 27, 2009 due to the struggles with her blood pressure.

## B.     Procedural history

On March 16, 2010, at the age of 46, Brown filed an application with the Social Security Administration for disability insurance benefits under Title II of the Americans with Disabilities Act, as well as an application for supplemental security income under Title XVI of the same Act. These applications were first denied on June 19, 2010, and then again after reconsideration on September 10, 2010. Brown filed a written request for a hearing before an Administrative Law

Judge (ALJ) on October 7, 2010. That hearing took place by video conference on February 7, 2012.

Two witnesses testified at the hearing: Brown and William Ellis, the latter being a vocational expert appointed by the ALJ. Brown testified about her work and medical history, as well as her ongoing medical problems. She told the court that the biggest challenge to her ability to work was her medications, and she described the impact of the medications' side effects on her daily life. Ellis then offered his opinion that a hypothetical person of Brown's age and education could find work in the national economy outside of a high-stress environment and without being exposed to physical hazards such as scaffolds or machinery. But he also testified that if such a person were unable to maintain an eight-hour work day or a 40-hour work week due to the side effects from medications, there would be no job in the national economy that she could perform.

On February 22, 2012, the ALJ issued her decision that denied Brown's application for benefits. She acknowledged that Brown appeared to be "very honest and sincere" in her testimony, but nonetheless concluded that Brown's medical record did not support her claims of being totally disabled. The ALJ discussed the symptoms of Brown's hypertension and psychological conditions at length, but found that each was under sufficient control to allow Brown to work, with certain limitations. Missing from the discussion, however, was the impact of the side effects of Brown's medications on her ability to work. The Appeals Council subsequently denied Brown's request for review on April 6, 2013, at which point her administrative remedies were officially exhausted and the ALJ's ruling became the final decision of the Commissioner.

On June 7, 2013, Brown filed suit in the United States District Court for the Western District of Kentucky, seeking judicial review of the Commissioner's decision. Her case was referred to a magistrate judge, who issued a Report and Recommendation on August 15, 2014 concluding that the case should be remanded to the Commissioner for further proceedings. The magistrate judge decided that the ALJ had erred as a matter of law by "determining Ms. Brown's physical functional capacity based only on treatment records and Ms. Brown's testimony," rather than "avail[ing] herself of her regulatory ability to request an [sic] either an opinion from Ms. Brown's treating physician, or order a consultative physical examination."

Noting his disagreement, the district judge upheld the Commissioner's objections to the magistrate judge's recommendation. According to the district judge, there is no per se requirement that an ALJ must consider medical opinions in determining a claimant's residual functional capacity (RFC). The district court then affirmed the Commissioner's decision denying benefits to Brown and dismissed her case with prejudice. Brown has timely appealed.

## II. ANALYSIS

This case comes before us in an odd procedural posture. Brown's primary argument— both before this court and below—has consistently been that the ALJ erred in failing to consider and address the impact of her medications' side effects on her ability to work. Yet both the magistrate judge and the district judge ignored her argument. First, instead of confronting the issue raised by Brown, the magistrate judge announced, sua sponte, a new rule that an ALJ cannot determine a claimant's RFC without obtaining and considering a physician's medical opinion on that issue. Because the magistrate judge concluded that his new rule disposed of the case, he declined to reach Brown's main argument and instead recommended that the case be remanded to the ALJ to obtain and consider a medical expert's opinion.

The district judge's 11-sentence opinion rejecting that recommendation addressed only the new legal rule announced by the magistrate judge. Because the district judge concluded that there was no legal support for this new rule, he affirmed the ALJ's decision denying Brown benefits. He did not, however, acknowledge in any way Brown's argument that she is unable to work due to the side effects of her medications. So, as it now stands, Brown has yet to receive a ruling on the factual issue that she raised in her complaint, despite the fact that she has argued it at every opportunity.

We review de novo district-court decisions in Social Security cases. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). But in this case there is no decision to review on the key issue raised by Brown.

The district judge correctly decided that "neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC." True enough, a medical opinion was presented by a treating or examining physician in each of the cases that the magistrate judge cited in support of his per se rule. *See, e.g., McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003) (reviewing the ALJ's decision that rejected the opinion of the claimant's treating physician); *Schmidt v. Sullivan*, 914 F.2d 117, 118-19 (7th Cir. 1990) (same); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (approving the Appeals Council's rejection of a medical opinion that was not backed by objective medical data).

Those cases and others indicate that an ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records. *See, e.g., Schmidt*, 914 F.2d at 118-19 (stating in dicta that the ALJ would have erred if he had disregarded the opinion of the claimant's treating physician simply because it did not

make sense from a layman's perspective); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (holding that the ALJ erred in rejecting the opinion of the claimant's treating physician in favor of the ALJ's own interpretation of the medical file); *Burke v. Astrue*, No. 3:11-cv-00185-S, 2011 WL 7404388, at *4 (W.D. Ky. Sept. 27, 2011), *report and recommendation adopted* 2012 WL 566790 (W.D. Ky. Feb. 21, 2012) (holding that the ALJ did not err in relying on the opinion of nonexamining physicians rather than interpreting raw clinical data himself).

But none of these cases even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered. The district judge therefore did not err in rejecting the magistrate judge's determination that such a rule required the reversal of the Commissioner's decision regarding Brown's application for benefits.

Having rejected that rule, however, the district judge should have then proceeded either to evaluate Brown's argument about the ALJ's failure to address the side effects of her medications or returned the case to the magistrate judge to consider those arguments. That claim remains at the heart of Brown's case. Affirming the Commissioner's decision without confronting the argument simply because the magistrate judge chose to go off on a different—and incorrect—legal path was an unfortunate oversight.

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). However, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Id.* at 121. Here, we decline to reach the substance of Brown's argument because there is no decision from the lower court to review. So despite acknowledging the correctness of the district court's legal ruling, we vacate the affirmance of the Commissioner's decision and remand the

case to the district court to consider whether the ALJ erred in failing to address the side effects of

Brown's medications.

### III.  CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and

**REMAND** the case for further proceedings consistent with this opinion.