**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0154n.06

Case No. 15-1875

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED**<br>Mar 17, 2016<br>DEBORAH S. HUNT, Clerk |

REBECCA HERNANDEZ,                  )

                                      )

      Plaintiff-Appellant,          )

                                        )      ON APPEAL FROM THE UNITED

v.                                      )      STATES DISTRICT COURT FOR

                                        )      THE WESTERN DISTRICT OF

COMMISSIONER OF SOCIAL SECURITY,    )      MICHIGAN

                                        )

      Defendant-Appellee.         )

                                        )      OPINION

                                        )

BEFORE: SILER, COOK, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** The Commissioner of Social Security denied Rebecca Hernandez's ("Hernandez") application for Supplemental Security Income benefits. Pursuant to 42 U.S.C. § 405(g), Hernandez sought judicial review of that decision in the district court, which affirmed the denial of benefits. She now appeals, asserting that the administrative law judge committed a number of errors in reviewing her application. For the following reasons, we **AFFIRM** the district court's judgment.

I.

Hernandez, now twenty-seven years old, has a family history of mental illness. At a very young age, she was diagnosed with major depression and anxiety. She took a variety of prescription medications in connection with these disorders throughout her childhood and

teenage years.  Hernandez eventually dropped out of high school but was able to obtain a GED.

Still, she has never held a job or looked for employment.

A.

The record details Hernandez's long journey in managing her major depression and

bipolar II disorder.  On March 27, 2007, when she was eighteen years old, Hernandez was

hospitalized for depression and suicidal thoughts.  She denied having taken any medication for

her disorders in the past two years.  The attending physician referred her to the Adult Mental

Health unit of the hospital, where she stayed until her father discharged her on March 29 against

medical advice.  Her medical chart indicates that she seemed to stabilize psychologically once

the hospital had begun administering medication.

After her discharge, Hernandez sought treatment from Mesa Counseling Services and Dr.

Denise Dittemore through 2011.  During their sessions, Dr. Dittemore generally noted that

Hernandez was "good" about taking her medications.  In 2012, Hernandez saw Dr. Marissa

Mejia, who also worked out of Mesa Counseling Services.  Dr. Mejia's treatment notes indicate

that Hernandez was "fair" about taking her medications.  From 2007 to 2012, Hernandez

periodically received Global Assessment of Functioning scores, which ranged from 25 to 55.[1]

B.

On September 9, 2011, Hernandez filed an application for Supplemental Security Income

("SSI") benefits.  She filed for reconsideration after initially being denied.  When her application

---

[1] A Global Assessment of Functioning (GAF) score of 55 indicates "moderate symptoms and moderate difficulty in social, occupational or school functioning." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006).  It is a subjective evaluation of a claimant's overall functional ability.  *Id.*  We have previously noted that "the Commissioner has declined to endorse the [GAF] score for use in the Social Security and Supplemental Security Income disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."  *Id.* (quoting *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (internal quotation marks and alternations omitted).

was again denied, she submitted a written request for a hearing. Hernandez appeared before an administrative law judge ("ALJ") on October 26, 2012. There, she testified that when she turned twenty-one years old, she was diagnosed with bipolar II disorder along with her major depression and anxiety. She was prescribed several medications to deal with her disorders. Those medications caused her to lack concentration, have occasional short term memory loss, and be drowsy. She explained that she spends a lot of time at home on the computer; that she rarely contributes to managing the household; that she will only go grocery shopping if she is accompanied by another individual; that she does not drive; and that she can sit, stand, and walk normally. Hernandez also testified that she does not work because her bipolar II disorder causes her to have depressive states and lack motivation. She elaborated that she has hypomania, which causes her to occasionally have energy, but she still regularly fails to complete projects or stay focused.

Dr. Dittemore completed a medical source statement ("MSS"), dated September 26, 2011, in support of Hernandez's application. The MSS is a form that asks physicians to check various boxes that describe different types of mental limitations. Dr. Dittemore noted that Hernandez was not limited with respect to five categories.[2] However, she indicated that Hernandez's limitations were moderate in three categories,[3] marked in nine categories,[4] and

---

[2] Dr. Dittemore marked that Hernandez had no limitation with respect to her ability to remember locations and work-like procedures; ability to understand and remember very short and simple instructions; ability to carry out very short and simple instructions; ability to make simple work-related decisions; and ability to be aware of normal hazards and take appropriate precautions.

[3] A moderate degree of limitation is one where "[t]he individual will have intermittent difficulty performing in [the] area." R. 9-7, PageID #273. Dr. Dittemore indicated that Hernandez had a moderate degree of mental limitation with respect to her ability to sustain an ordinary routine without special supervision; ability to work in coordination with or in proximity to others without being distracted by them; and ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

extreme in at least five categories.[5]  She also indicated that Hernandez would likely have four absences from work per month but that she could also manage any benefits in her own best interest.  Dr. Dittemore did not elaborate in the sections below that requested "support" for a given assessment.  R. 9-7, PageID #273-75.

In addition to the MSS, Hernandez's SSI application included several supporting documents.  She submitted her treatment notes from Dr. Dittemore, Dr. Mejia, and her 2007 hospitalization.  Hernandez also completed an Adult Function Report, where she stated that she can prepare simple meals, do laundry, wash dishes, and clean her home.  Her answers largely track her testimony at the hearing.  The record also includes two medical opinions from state agency medical and psychological consultants.  These doctors concluded, both originally and upon reconsideration, that Hernandez was not disabled.  They explained that she could perform non-public, unskilled work.

---

[4] A marked degree of limitation is one that "is [a] serious limitation," where the "individual cannot generally perform satisfactorily in [that] area."  R. 9-7, PageID #273.  Dr. Dittemore checked "marked" with respect to Hernandez's ability to understand and remember detailed instructions; ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to perform at a consistent pace with a standard number and length of rest periods; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others.

[5] An extreme limitation is described as "major," where an individual has "no useful ability to function in this area."  R. 9-7, PageID #273.  According to Dr. Dittemore's MSS, Hernandez had an extreme limitation in her ability to complete a normal workday without interruptions from psychologically based symptoms; ability to complete a normal workweek without interruptions from psychologically based symptoms; ability to interact appropriately with the general public; and ability to travel in unfamiliar places or use public transportation.  The form also seems to indicate that Dr. Dittemore believes Hernandez has an extreme limitation when in reference to her ability to maintain attention and concentration for extended periods, but it is difficult to confirm due to poor photocopying.

A vocational expert also testified at the ALJ hearing. She explained that a significant number of jobs existed in Hernandez's community and throughout the country that were unskilled and had occasional social interaction. Conversely, she testified that neither the national nor the local economy contained jobs that had only occasional contact with a supervisor; that had no social interaction; that were limited to repetitive tasks; and that would allow an employee to be off-task at least twenty percent of the time.

The ALJ determined that Hernandez was not disabled. He concluded that Hernandez was not engaged in substantial gainful activity and that her impairments (bipolar disorder and anxiety) were severe. However, the ALJ found that Hernandez "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R., Subpart (P), Appendix 1. R. 9-2, PageID #86. This was because he determined that Hernandez had no restrictions in her daily living activities, moderate difficulties with social functioning, moderate difficulties with concentration, and no episodes of decompensation. Thus, the ALJ concluded that Hernandez had a "residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive tasks; and only occasional interaction with the public." *Id.* at 87.

In connection with his RFC decision, the ALJ found Hernandez's testimony lacking credibility insofar as she described "the intensity, persistence and limiting effects of her symptoms." *Id.* at 88. He also determined that the Adult Third Party Function Report filled out by Hernandez's boyfriend, Isaac James Drew ("Drew"), lacked credibility due to Drew's inherent bias interest and because Drew's assertions conflicted with other objective evidence in the record. The ALJ also declined to give controlling weight to Dr. Dittemore's MSS, as it "was

not supported by the objective medical evidence." *Id.* at 90. Finally, the ALJ also gave little weight to the state agency's determinations, as they "were not supported by the record." *Id.*

Because Hernandez had never worked before, the ALJ consulted the vocational expert's findings. Based on her assertion that unskilled, occasionally social jobs existed in the economy, the ALJ determined that Hernandez was not disabled. On June 17, 2014, the Appeals Council denied Hernandez's request for review. Pursuant to 42 U.S.C. § 405(g), Hernandez filed suit in the district court, seeking judicial review of the ALJ's decision. The district court affirmed the ALJ's denial of benefits on June 4, 2015. Hernandez timely appeals.

II.

We apply a *de novo* standard of review to cases involving applications for SSI benefits. *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 957 (6th Cir. 2015). The burden is on the plaintiff to prove that she is disabled within the meaning of the regulations, and we are limited to reviewing the record before the ALJ. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010). That being said, we may only consider "whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy*, 594 F.3d at 512 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). "The substantial-evidence standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). We may affirm even if evidence in the record supports the opposite conclusion. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

Hernandez first asserts that the ALJ erred in declining to give controlling weight to Dr. Dittemore's MSS under the treating physician rule. She further contends that the ALJ erred in declining to give sufficient weight to the two state agency medical and psychological consultants. Second, she claims that substantial evidence does not exist in the record to support the ALJ's finding that she is not disabled because he declined to consider any of the medical opinions in the record. Lastly, she challenges the ALJ's adverse credibility determination against her and her boyfriend, Drew. We review each issue in turn.

A.

The treating physician rule requires agencies making a disability determination to generally

> give more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). Treating physicians' opinions are given "controlling weight" when their opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." *Id.* If an ALJ declines to give controlling weight to a treating physician, he must "always give good reasons." *Id.* In other words, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 F. App'x at 552. An ALJ must also determine what weight—if not controlling—to give the treating physician's opinion, by "apply[ing] certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of

the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

If an ALJ fails to give good reasons for declining to give a treating physician's opinion controlling weight, "[w]e will reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner.'" *Friend*, 375 F. App'x at 551 (quoting *Wilson*, 378 F.3d at 543-46). "[A]n ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Id.* At the same time, we may conclude that an insufficient discussion may be harmless error if

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.

*Id.* (internal quotation marks omitted) (quoting *Wilson*, 378 F.3d at 547). If we may clearly infer the reasons the ALJ declined to give controlling weight to a treating physician's opinion, "strict compliance with the rule may sometimes be excused." *Id.*

Here, the ALJ rejected the MSS, determining that it was not supported by the objective medical evidence in the record, "as discussed above." R. 9-2, PageID #90. The previously mentioned objective medical evidence includes the 2007 hospitalization for suicidal thoughts; a treatment note from May 16, 2011, that indicates that Hernandez felt her medication was helping her; and treatment notes from May 21, 2012 and July 25, 2012 that indicate that Hernandez either was not routinely taking her medications or was not taking the right dosages of her medications. The ALJ also specifically mentioned Hernandez's ability to handle financial

matters, ability to prepare simple meals, and desire to move to Michigan to live with Drew. Lastly, the ALJ also rejected the MSS because it stated conclusions reserved for the Commissioner.

Although the ALJ did not specifically identify the previously discussed objective medical evidence, it is clear which evidence he was referring to and thus strict compliance with the regulations is not necessary in this instance. *See Friend*, 375 F. App'x at 551. Still, Hernandez argues that the objective medical evidence is not inconsistent with Dr. Dittemore's indicated limitations on her mental functioning. However, it is nearly impossible to analyze whether that is true because Dr. Dittemore's check-box analysis is not accompanied by any explanation. For example, she does not explain whether these boxes reflect Hernandez's limitations when she is taking her medication or if these boxes reflect when she is not taking her medication. We have previously declined to give significant weight to rudimentary indications that lack an accompanying explanation. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 525 (6th Cir. 2014) (quoting SSR 96-2p, at *1, which states that "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion"); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the MSS here is "weak evidence at best" and meets our patently deficient standard. *See Friend*, 375 F. App'x at 551.

Furthermore, this is not a case where the ALJ is substituting his "own interpretation of medical records for that of a physician who has examined the records." *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). The ALJ properly discussed objective

evidence in the record that demonstrates that Hernandez's symptoms lessen when she is compliant with her medication, that she frequently has issues taking the right medication at the right time, and that she can tolerate certain limited social interactions, such as shopping and interacting with her boyfriend. To the extent that Dr. Dittemore's check-box analysis conflicts with such evidence, the ALJ properly discounted the MSS. The conflicting objective evidence and the absence of any elaboration regarding Hernandez's purported limitations properly constitute "good reasons" for rejecting the MSS.

Hernandez also contends that the ALJ wrongfully gave "little weight" to the examining state agency medical and psychological consultants' analysis, who indicated that Hernandez should be limited to non-public, unskilled work. R. 9-3, PageID #141. When evaluating the weight of a non-treating physician, the regulations require an ALJ to consider "the consultant's medical specialty and expertise in [the benefits] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii). Such opinions are entitled to less deference than controlling treating-physician opinions, but more deference than non-treating, non-examining opinion sources. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).

The only difference between the ALJ's determination and the consultants' conclusion is whether Hernandez can handle occasional interaction with the general public or whether she should be limited to non-public jobs. In the Adult Function Report, to which the ALJ refers, Hernandez indicated that she can go out alone but that "usually" someone accompanies her. R. 9-6, PageID #239. She also indicated that she shops two to three times per month and that she goes on family outings once per month. The ALJ, however, failed to acknowledge that

Hernandez reported that she felt extremely uncomfortable and that she shakes during each of her experiences in public. Moreover, she only ventures out alone because she has to in order to attend her therapy sessions or pick up her medications. He also failed to note that she indicated that she could not go out in public for more than an hour. Instead, the ALJ explained that the consultants' conclusion was not supported by the record, as Hernandez herself admitted that "she had a boyfriend and could shop in [] stores." R. 9-2, PageID #90. However, evidence of seldom shopping and interacting with her boyfriend does not support the conclusion that Hernandez can "do any of these activities on *a sustained basis*, which is how the functional limitations of mental impairments are to be assessed." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The ALJ did not discuss any additional reasons for affording the consultants' conclusions "little weight."

Still, any error was harmless. While the consultants' review acknowledged that Hernandez had been prescribed several medications, they never discuss whether she consistently takes those medications. They also never discuss what effect those medications have on Hernandez and her symptoms. In fact, no doctor opines on whether Hernandez would exhibit the same mental limitations that she complains of, even if she maintained compliance with her medication regiment. In this way, like the MSS, the consultants' findings are of limited value. Therefore, the ALJ's finding that they are entitled to "little weight" is harmless error.

B.

Second, Hernandez argues that the ALJ's RFC decision was not supported by any medical opinion, as he rejected or gave little weight to the ones in the record. In making this argument, Hernandez cites to numerous district court cases, suggesting that they stand for the proposition that an ALJ's decision cannot be upheld if he rejects all underlying medical opinions.

*See, e.g.*, *Ritchie v. Comm'r of Soc. Sec.*, No. 1:14-cv-286, 2015 WL 46121, at *6 (S.D. Ohio Jan 2, 2015) (noting that "[c]ases in which an ALJ has independently determined an RFC, while rejecting or giving 'little weight' to virtually *all* of the medical opinion evidence, may not always reflect error, but naturally invite closer scrutiny"); *Steadman v. Comm'r of Soc. Sec.*, No. 1:10-cv-801, 2011 WL 6415512, at *12 (S.D. Ohio Nov. 14, 2011) (explaining that "[t]he ALJ failed to articulate the basis for his RFC opinion and to link his RFC determination with specific evidence in the record").

Bearing in mind that it is the plaintiff who must prove that she is disabled, the ALJ in this case did not "fashion an RFC out of whole cloth." *Steadman*, 2011 WL 6415512, at *13. Consistent with the state agency medical consultants' opinion, he determined that Hernandez was able to complete simple, repetitive work. The ALJ also pointed to objective evidence in the record aside from the doctors' opinions: Hernandez's own testimony and admissions as well as hospitalization records and treatment notes. Even though the ALJ's decision might invite further scrutiny due to its limited reliance on doctors' opinions, nothing suggests that the ALJ quilted together solely subjective determinations in fashioning the RFC.

C.

Lastly, Hernandez challenges the ALJ's adverse credibility determination regarding her and her boyfriend, Drew. Credibility is properly evaluated by the ALJ, not the reviewing court. *Rogers*, 486 F.3d at 247. While in theory we will not "disturb" an ALJ's credibility determination without a "compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially "unchallengeable," *Payne v. Commissioner of Social Security*, 402 F. App'x 109, 113 (6th Cir. 2010). When a credibility determination regarding a claimant's subjective complaint is at issue, we affirm if the ALJ's

determination is "reasonable and supported by substantial evidence." *Rogers*, 486 F.3d at 249.

In other words,

> [w]henever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record. The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized.

*Id.* at 247 (internal quotation marks omitted).

The ALJ determined that Hernandez was less than fully credible, as "[i]t appears the limited range of daily activities is a lifestyle choice and not due to any established impairment." R. 9-2, PageID #88. The ALJ stated that Hernandez might be experiencing symptoms as she describes, but he also explained that the symptoms were potentially due to Hernandez's failure to take medication as prescribed.

Substantial evidence in the record supports the ALJ's credibility determination, and no compelling reason exists to overturn that decision. Contrary to Hernandez's assertions, the ALJ is not simply regurgitating boilerplate language in explaining his reasoning for finding her less than fully credible. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) (explaining that there is a risk that "an ALJ will mistakenly believe it sufficient to *explain* a credibility finding" to recite boilerplate language); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (declining to find that the ALJ had simply reiterated boilerplate language where the ALJ had explained his reasons for finding an individual not fully credible elsewhere in the opinion). Here, the ALJ points to instances in the record where Hernandez was inconsistent about taking her medication, which she admitted affected her symptoms. Additionally, Hernandez concedes that she has the ability to handle financial matters,

perform household chores, maintain her personal hygiene, occasionally shop in public for short periods of time, maintain focus on a project for up to a day at a time, and prepare simple meals. The ALJ explained that Hernandez responds well to medication and that any issues she faces in accomplishing these tasks might be alleviated by proper adherence to her medication regiment. Nothing in the record contradicts this observation. Accordingly, the ALJ's determination is reasonable and reflects the substantial evidence in the record. Hernandez has not demonstrated a compelling reason to disturb the credibility determination against her.

With respect to Drew's Adult Third Party Function Report, the ALJ also concluded that he was less than fully credible. In making that determination, the ALJ noted that he was a layperson, financially and emotionally biased, and, "[m]ost importantly," the information he presented was inconsistent with the objective medical evidence. R. 9-2, PageID #89. To the extent that Drew's opinion of Hernandez's abilities was inconsistent with the ALJ's RFC assessment, the ALJ found those statements not credible.

Because the ALJ relied on objective evidence in the record, including Hernandez's own assessment of her limitations, there is no compelling reason to overturn the ALJ's credibility determination. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511-12 (6th Cir. 2013) (refusing to disturb a credibility determination when the determination was based on "both the medical record and plaintiff's own assessment of his abilities and limitations"); *see also Morgan v. Barnhart*, 142 F. App'x 716, 724-25 (4th Cir. 2005) (declining to overturn a credibility determination when an ALJ concluded that there was inherent familial bias "because the ALJ did not, in fact, discredit the observations of [the claimant's] family members solely because of inherent familial bias"). We therefore decline to do so.

III.

For the foregoing reasons, we **AFFIRM** the district court's judgment.