NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0235n.06

No. 18-3926

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED**<br>Apr 30, 2020<br>DEBORAH S. HUNT, Clerk |

ELKHORN EAGLE MINING CO., )
    Plaintiff-Appellee, )
     )
v. )
     )
ATLANTIA HIGGINS, et al., )
    Defendant-Appellant. )
     )

ON PETITION FOR REVIEW OF ORDER OF THE BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

BEFORE:     BATCHELDER, DONALD, and READLER, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Elkhorn Eagle Mining Company ("Elkhorn") petitions this court to review the Benefit Review Board's ("Board") order finding that Elkhorn failed to raise timely its Appointments Clause challenge before the Board. Since the Supreme Court's June 2018 decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), we have addressed several variations of this timeliness issue, including one with a nearly identical procedural scenario. Because Elkhorn failed to raise its Appointments Clause challenge in its opening brief before the Board, we AFFIRM.

**I.**

The parties agree that Edward Higgins began working for Elkhorn on July 23, 1997, and that his final day of work was August 3, 1998. The heart of the dispute is whether Higgins worked for at least one year under the Black Lung Benefits Act ("BLBA"). Under the BLBA, the mine operator that last employed the claimant for at least a year is the employer that is held liable for the miner's damages. 20 C.F.R. §§ 725.494, 725.495(a). This means that Elkhorn would be liable

for Higgins's claims if Elkhorn was the last operator that employed Higgins for at least one year. Elkhorn argues that because Higgins missed over a month of employment due to an injury in the spring of 1998, he was not on Elkhorn's payroll for 365 days and therefore failed to meet the one-year requirement. The Board and the ALJ disagreed, holding that Elkhorn misunderstands the regulatory scheme and that Higgins did meet the one-year requirement under the BLBA.

Summarized briefly, there are four ways a miner can accumulate one year's worth of service time: (1) if the miner was employed for 365 calendar days and worked 125 days in or around the coal mine, the miner has "clearly established" one year's service time; (2) if the miner worked at least 125 days in or around the mine, the miner is presumed to have met the one-year requirement "for the purposes of the [BLBA]"; (3) if the miner was employed for one calendar year or partial periods totaling at least 365 days, the miner is "presumed" to have met the 125-day working day requirement, unless there is evidence to the contrary; or (4) if a miner worked for less than one year, an adjudicator can use the miner's yearly income and the average daily earnings of coal mine industry employees to calculate if the miner worked at least 125 days in or around the mine. 20 C.F.R. § 725.101(a)(32)(i)-(iii); *Shepherd v. Incoal, Inc.*, 915 F.3d 392, 401-02 (6th Cir. 2019).

A claim under the BLBA follows a winding path that includes four sequential stages of review: (1) an Office of Workers' Compensation Programs ("OWCP") district director initially reviews the claim and issues a Proposed Decision; (2) the miner or the operator may then have a Department of Labor Administrative Law Judge ("ALJ") review the decision de novo; (3) any party of interest may appeal a "substantial question of law or fact" to the Benefits Review Board; and (4) finally, an aggrieved party may petition this court to review the Board's legal conclusions de novo and factual findings under the substantial-evidence standard. 33 U.S.C. § 921(c);

20 C.F.R. §§ 725 *et seq.*, 801 *et seq.*; *Zurich Am. Ins. Group v. Duncan*, 889 F.3d 293, 299 (6th Cir. 2018).

After first filing for BLBA benefits in 2002,[1] Higgins again filed a claim on May 3, 2013. *Higgins v. Elkhorn Eagle Mining Co.*, No. 17-0475 BLA, 2018 WL 3727423, at *1, n.1 (Ben. Rev. Bd. July 30, 2018). On July 28, 2014, an OWCP district director issued a Proposed Decision and Order finding Elkhorn liable for Higgins's claims. Elkhorn requested a de novo hearing before an ALJ, which was held two years later, on July 11, 2016. The ALJ issued her decision on May 8, 2017, finding that Elkhorn was liable for Higgins's claim. Specifically, the ALJ determined that Higgins worked at least 260 days in or around the mine, and thus found that Higgins met the one-year requirement under the second provision of the BLBA (i.e., by working at least 125 days in or around the coal mine). *Id.* at *3. On June 6, 2017, Elkhorn timely appealed the ALJ's decision to the Board. Elkhorn submitted its opening brief to the Board on July 18, 2017, but it did not raise the Appointments Clause issue at that time. *Id.* at *1, n.3. The OWCP district director filed its briefs to the Board on January 16, 2018, and Elkhorn did not file a reply brief.

While both parties were waiting for the Board's final decision, the Supreme Court handed down *Lucia v. SEC* on June 21, 2018. The case held that Securities & Exchange Commission ("SEC") ALJs must be appointed by the Head of a Department in accordance with the Appointments Clause of the Constitution. 138 S. Ct. at 2049 (citing Art. II, § 2, cl. 2). Seventeen days later, on July 9, 2018, Elkhorn moved to remand, relying on this new Supreme Court decision, and raised the Appointments Clause issue for the first time. *Higgins*, No. 17-0475 BLA at *1, n.3. But this was nearly a year after Elkhorn submitted its opening brief to the Board. On July 30th, the Board issued its decision finding for Higgins on the merits and rejecting Elkhorn's

---

[1] The District Director denied the claim on April 18, 2003, "by reason of abandonment." *Higgins v. Elkhorn Eagle Mining Co.*, No. 17-0475 BLA, 2018 WL 3727423, at *1, n.1 (Ben. Rev. Bd. July 30, 2018).

Appointments Clause arguments as untimely. *Id.* at *5. Elkhorn now petitions this court to review the Board's decision.

## II.

As a general matter, the first question is whether parties must exhaust issues before an agency prior to bringing them to court. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 743 (6th Cir. 2019). Courts have held there must be issue exhaustion before the agency: (1) whenever the statute requires it, (2) whenever a regulation requires it, or (3) when courts hold there is an implied exhaustion rule. *Id.* at 746-50. The BLBA falls under the second category: 20 C.F.R. § 802.211(a) requires issue exhaustion before the Benefits Review Board. *Id.* at 749.

The next—and most important—question is whether Elkhorn exhausted its Appointments Clause challenge by raising it for the first time in a motion for remand before the Board's decision. Elkhorn argues that (1) it timely raised the issue, and (2) even if its challenge was untimely, the challenge should fall under an exception for facial constitutional challenges or for extraordinary circumstances. We hold that the Elkhorn did not timely raise its Appointments Clause challenge and that it does not fall under either of the two exceptions Elkhorn attempts to invoke.[2]

### A. Elkhorn's Appointments Clause Challenge was Untimely

Since the Supreme Court handed down *Lucia v. SEC* in June 2018, this court has repeatedly had to address whether Appointments Clause challenges were timely raised. First, in July 2018, we held that an as-applied constitutional challenge based on the Appointments Clause was forfeited when the party raised the issue for the first time before the Court of Appeals, not before the agency. *Jones Brothers, Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018). Next, in December 2018, we held that a party forfeited its challenge when it first raised the issue in its reply

---

[2] Because Elkhorn's challenge was untimely, we do not address the merits of its Appointments Clause claim.

brief after failing to raise the issue in its opening brief before this court. *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). Then, in September 2019, we held that a claim raised for the first time in a motion for reconsideration after the Benefits Review Board had issued its decision was also brought too late in the review process. *Bryan*, 937 F.3d at 746, 751. Finally, in January 2020, we held that a claim first raised in a motion to file a supplemental brief before the Board's decision was also untimely. *Island Creek Coal Co. v. Young*, 947 F.3d 399, 402-03 (6th Cir. 2020). Now, we must address whether a party properly exhausted its constitutional claim before the Board by filing a motion to remand before the Board issued its decision, but after the briefs had been submitted. Elkhorn raised its Appointments Clause argument for the first time in a motion for remand prior to the Board's decision, but nearly twelve months after its opening brief and six months after the OWCP director's response brief had been filed.

The agency argues that, under the Board's precedent, Elkhorn should have first raised the issue in its opening brief and cites no fewer than a dozen cases supporting its argument.[3]

---

[3] These cases were decided both before and after *Lucia*. Decisions issued before *Lucia* include: *Pauley v. Consolidation Coal Co*., No. 17-0554 BLA, at n.1 (Ben. Rev. Bd. Apr. 25, 2018) (denying abeyance motion; "[b]ecause employer did not raise the Appointments Clause issue in its opening brief, it waived the issue"); *Eversole v. Shamrock Coal Co*., No. 17-0629 BLA (Ben. Rev. Bd. Apr. 24, 2018) (same); *Ravalli v. Pasha Maritime Servs*., No. 01-0572, 36 Ben. Rev. Bd. Serv. 91 (Sept. 12, 2002) (parties are barred from raising issues for the first time in a motion for reconsideration); *Williams v. Humphreys Enters., Inc*., Nos. 88-0111 BLA, 88-1437, BLA,19 Black Lung Rep. (MB) 1-111, 1-114, 1995 WL 931607, at *1, n.1 (Ben. Rev. Bd. Aug. 31, 1995) (declining to consider new issues not raised "before the administrative law judge or the Board"); *Senick v. Keystone Coal Mining Co*., No. 80-1543 BLA, 5 Black Lung Rep. (MB) 1-395, 1-398 (Ben. Rev. Bd. Dec. 16, 1982) (stating that the Board "will not normally address new arguments raised in reply briefs" and declining to so); *Caldwell v. North American Coal Corp*., No. 80-350 BLA, 4 Black Lung Rep. (MB) 1-135, 1-138 (1981) (stating that the Board's "practice accords with the treatment of reply briefs in the United States Courts of Appeals" and that "[b]ecause this argument was raised for the first time in claimant's reply brief, we do not address it").

Decisions issued after *Lucia* include: *Tackett v. IGC Knott County*, No. 18-0033 BLA, 2019 WL 1075364, at *1, n.2 (Ben. Rev. Bd. Feb. 26, 2019) (denying motion to remand; "employer waived this argument by failing to raise it when the case was initially before the Board"); *Haynes v. Good Coal Co*., Nos. 18-0021 BLA; 18-0023 BLA, 2019 WL 523769, at *2, n.5 (Ben. Rev. Bd. Jan. 18, 2019) (denying motion to remand; "[b]ecause employer first raised its Appointments Clause argument seven months after filing its opening brief in support of its petition for review, employer forfeited the issue"); *Young v. Island Creek Coal C*o., No. 18-0064 BLA, 2018 WL 7046801, at *1, n.3 (Ben. Rev. Bd. Dec. 17, 2018) (denying motion to permit supplemental briefing; "[b]ecause employer did not raise the Appointments Clause issue in its opening brief, it waived the issue"); *Eversole v. Shamrock Coal Co*., No. 17-0629 BLA, 2018 WL 7046745, at *1, n.3 (Ben. Rev. Bd. Dec. 12, 2018) (denying request for new hearing; "[b]ecause employer did not raise the Appointments Clause issue in its opening brief, it forfeited the issue"); *McIntyre v. IGC*

The agency claims that issues first raised after the opening brief are forfeited and that all claims must have been raised before "briefing had closed."[4] But Elkhorn argues that because this claim did not exist at the time of its opening brief (i.e., pre-*Lucia*), it did timely raise the issue in July 2018 through its motion for remand. Elkhorn relies on the regulation and interprets it to require only that issues be raised before the Board, not necessarily in the party's opening brief. Based on the precedents of both this court and the Board, we hold that Elkhorn's claim was not timely raised.

The relevant regulation, 20 C.F.R. § 802.211(b), requires that a party's petition for review be "accompanied by a supporting brief, memorandum of law or other statement" and must "specifically [state] the issues to be considered by the Board." In *Young*, a panel of this court agreed with the Board's interpretation in a published opinion, finding that "the Board requires that substantive challenges to an ALJ's determination be raised in a party's opening brief filed with the Board." *Young*, 947 F.3d at 402 (citing 20 C.F.R. § 802.211(a)).

The Board's precedent also supports the conclusion that a party forfeits an issue when it raises a challenge for the first time several months after the party filed its opening brief. *See, e.g., Pauley v. Consol. Coal Co.*, No. 17-0554 BLA, at n.1 (2018) ("Because employer did not raise the Appointments Clause issue in its opening brief, it waived the issue"); *Caldwell v. North American*

---

*Knott Cty, LLC*, No. 17-0583 BLA, 2018 WL 7046700, at *1, n.1 (Ben. Rev. Bd. Nov. 26, 2018) (denying abeyance motion "because employer failed to raise the Appointments Clause argument in its petition for review and supporting brief"); *Beams v. Cain & Son, Inc.*, No. 18-0051 BLA, 2018 WL 7046795, at *1, n.5 (Ben. Rev. Bd. Nov. 26, 2018) (denying motion to remand; "[b]ecause employer first raised its Appointments Clause argument seven months after filing its Memorandum in Support of Petition for Review, employer forfeited the issue"); *Elkins v. Dickenson-Russell Coal Co.*, No. 17-0461 BLA, 2018 WL 3727420, at *1, n.3 (Ben. Rev. Bd. July 5, 2018) (denying abeyance motion; "[b]ecause employer did not raise the Appointments Clause issue in its opening brief, it waived the issue"); *Napier v. Star Fire Coals, Inc.*, No. 17-0149 BLA (Ben. Rev. Bd. July 5, 2018) (denying motion for reconsideration; "employer waived this argument by failing to raise it in its opening brief").

[4] In a footnote in its brief, the agency hints that raising an issuing for the first time before the Board may even be too late, instead suggesting that all issues must first be raised before the ALJ in order to not be forfeited. However, the agency admits the "Court need not determine" that question at this time, and we decline to do so because we do not address any arguments outside of the scope of the question presented to us. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 332 (6th Cir. 2015) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.") (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

*Coal Corp.*, No. 80-350 BLA, 4 Black Lung Rep. (MB) 1-135, 1-138 (1981) ("Because this argument was raised for the first time in claimant's reply brief, we do not address it."); *cf. Noble v. Cumberland River Coal Co.*, No. 18-0419 BLA, at 3-4 (Ben. Rev. Bd. Feb. 27, 2019) (granting a motion for remand for an Appointments Clause challenge because it was timely raised).

We recently affirmed that a party must "raise an issue with an agency 'at the time appropriate under its practice' in order to preserve the issue for judicial review." *Bryan*, 937 F.3d at 750 (citing *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)). The Board has consistently held that parties forfeit an argument when they fail to raise it in their opening brief. This court recognized that in *Young*, affirming that claims before the Board must be raised in a party's opening brief. *Young*, 947 F.3d at 402. Consequently, we hold that Elkhorn forfeited its Appointments Clause challenge when it failed to raise the issue in its opening brief before the Board.

**B. Elkhorn's Untimely Challenge Does Not Fall Under any Exception**

Elkhorn argues in the alternative that even if its Appointments Clause challenge is untimely, the court should still hear its claim under an exception for facial constitutional challenges or for extraordinary circumstances. In *Bryan*, we concluded that we "need not decide what exceptions (if any) exist" when it comes the BLBA, and we need not address that issue in this case either. *Bryan*, 937 F.3d at 752. Like the petitioners in *Bryan*, Elkhorn relies on the *Jones Brothers* case for both exceptions. And like the petitioners in *Bryan*, Elkhorn fails to establish either exception: Elkhorn failed to raise a facial constitutional challenge (rather, it raised an as-applied challenge) and Elkhorn did not identify any extraordinary circumstances.

**1. Exception for Facial Constitutional Challenges**

In *Jones Brothers*, we held that the Federal Mine Safety and Health Review Commission ("Mine Commission") could not hear a facial constitutional challenge because an "administrative agency may not invalidate the statute from which it derives its existence and that it is charged with implementing." *Jones Brothers*, 898 F.3d at 673. We concluded that the Mine Commission, "like all administrative agencies, has no authority to entertain a facial constitutional challenge to the validity of a law." *Id.* However, we later held in *Bryan* that the Benefits Review Board "may well be able to consider facial claims—a fact that would eliminate this exception's raison d'être." *Bryan*, 937 F.3d at 753. We found that because the "Board serves the same functions that district courts performed before its 1972 creation," it appears that the Board could review constitutional challenges as any district court could. *Id.* (citing *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1118 (6th Cir. 1984) ("Therefore, it appears that Congress intended to vest in the Board the same judicial power to rule on substantive legal questions as was possessed by the district courts.")).

In *Bryan*, we ultimately did not decide whether the Board may hear facial constitutional challenges because the petitioner failed to present one. *Id.* The same is true here. Elkhorn does not actually challenge how the ALJ was appointed under the BLBA statute. Rather, Elkhorn challenges how the Department of Labor chose *to apply* the BLBA statute in having the ALJ appointed by someone other than the Secretary of Labor. Indeed, it is clear the BLBA statute could be applied constitutionally given that all Department of Labor ALJs (both new and existing) since December 2017 have been appointed by the Secretary of Labor as a Department Head in accordance with the Constitution's Appointments Clause. *Id.*

## 2. Exception for Extraordinary Circumstances

In *Jones Brothers*, the petitioner successfully argued for an extraordinary-circumstances exception to its forfeited Appointments Clause challenge. We held that the "absence of legal authority" on the issue fell under the Mine Act's statutory "extraordinary circumstances" exception. *Jones Brothers*, 898 F.3d at 677; 30 U.S.C. § 816(a)(1). However, neither the BLBA nor its implementing regulations "contain similar language" to create such an exception. *Bryan*, 937 F.3d at 753.

Notwithstanding the lack of a statutory basis for an extraordinary-circumstances exception, Elkhorn fails to identify any extraordinary circumstances that would justify this alleged exception. Rather, Elkhorn says we should excuse its forfeited issue "for the same reasons accepted by the Court in *Jones Brothers*." However, unlike in *Jones Brothers* with the Mine Commission, there has been "abundant authority…that showed that the Board could hear the claim." *Bryan*, 937 F.3d at 754 (citing *Gibas*, 748 F.2d at 1118; *Duck v. Fluid Crane & Constr. Co*., No. 02-0335, 2002 WL 32069335, at *2 n.4 (Ben. Rev. Bd. Oct. 22, 2002)). "Thus, the absence of authority that *Jones Brothers* found extraordinary is itself absent here." *Bryan*, 937 F.3d at 754.

Even though Elkhorn submitted its opening brief months before *Lucia* was decided, Elkhorn still could have raised its Appointments Clause challenge in its opening brief. As we have repeatedly held, "No precedent prevented [parties] from bringing the constitutional claim before then. *Lucia* itself noted that existing case law 'says everything necessary to decide this case.'" *Wilkerson*, 910 F.3d at 257 (quoting *Lucia*, 138 S. Ct. at 2053). Undoubtedly, *Lucia*'s holding would have strengthened Elkhorn's Appointments Clause argument, but *Lucia* was not a necessary predicate for Elkhorn's raising such a challenge eleven months earlier; indeed, other litigants had pressed the Appointments Clause issue before *Lucia*. *Id.* (citing cases). Consequently, *Lucia* does

not warrant an extraordinary circumstances exception (if such an exception does exist for the BLBA) and Elkhorn fails to identify any other reasons for such an exception.

To summarize, it is not clear whether the BLBA has exceptions for facial constitutional challenges or extraordinary circumstances, but even if the statute does, Elkhorn's failure to raise a facial challenge or identify any extraordinary circumstances dooms both arguments. Because Elkhorn failed to timely raise its Appointments Clause challenge before the Board and because Elkhorn's argument does not fall under either purported exception, we hold that Elkhorn has forfeited its Appointments Clause challenge and we cannot reach the merits of the claim.

**III.**

Notwithstanding our holding regarding Elkhorn's Appointments Clause challenge, we still must decide whether the Board correctly held that Elkhorn was the responsible operator for Higgins's claims. This court reviews the Board's legal conclusions de novo and its factual findings under the substantial-evidence standard. *Duncan*, 889 F.3d at 299. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068-69 (6th Cir. 2013)).

In order for a miner to claim benefits under the BLBA, he must show that he is "totally disabled." 20 C.F.R. § 725.202(d)(2)(iii). And the last coal mine that employed Higgins for at least one year is the responsible operator and is liable for Higgins's damages. § 725.495(a)(1). The parties do not dispute whether Higgins was totally disabled—he was tragically paralyzed from the waist down in a workplace injury. Nor do the parties dispute the dates Higgins began and ended his employment with Elkhorn. Rather, they dispute only whether Higgins's service time constituted one year under BLBA regulations.

The BLBA regulation defining "year," as recently interpreted by this circuit, "sets out four alternate ways in which a claimant can establish requisite periods of coal mine employment." *Shepherd*, 915 F.3d at 401-02. First, if the miner is employed for 365 calendar days and worked 125 days in or around the coal mine, then the miner is considered to have "clearly established" one year's service time. *Id.*; 20 C.F.R. § 725.101(a)(32). Second, if the miner worked at least 125 days in or around the coal mine, "then the miner has worked one year in coal mine employment for all purposes under the [BLBA]." § 725.101(a)(32)(i). Third, if the miner has been employed for one calendar year or partial periods totaling at least 365 days, then "it must be presumed" that the miner has met the 125-day working day requirement, unless there is evidence to the contrary. § 725.101(a)(32)(ii). Fourth and finally, if a miner worked for less than one year (or it remains unclear when the miner began and finished working at the mine), an adjudicator can use the miner's yearly income and divide it by "the coal mine industry's average daily earnings for that year, as reported by the Bureau of Labor Statistics (BLS)," to estimate the number of days the miner worked. § 725.101(a)(32)(iii). If it is determined that the miner worked at least 125 days, then the miner is considered to have worked one year in coal-mine employment for the purposes of the BLBA. § 725.101(a)(32)(i).

Higgins began work at Elkhorn on July 23, 1997, and his final day of work was August 3, 1998. The parties dispute whether Higgins was on the payroll during the spring of 1998 after suffering an injury and how long Higgins was off the payroll. Elkhorn argues that Higgins was off its payroll from February 28, 1998, to March 30, 1998. The ALJ found there was no evidence Higgins was taken off the payroll, though Elkhorn challenged whether this was sufficient to conclude Higgins was on the payroll. *Higgins*, No. 17-0475, at *2-3; *but see Kentland Elkhorn*

*Coal Corp. v. Hall*, 287 F.3d 555, 563 (6th Cir. 2002) ("Speculation as to whether [the miner] remained on the payroll is not evidence that he was on the payroll.").

However, Elkhorn's dispute over the payroll ultimately misses the mark as the ALJ held the correct standard is whether "the claimant continued to have an employment relationship" with the employer. *Higgins*, No. 17-0475 at \*2; *see BGL Mining Co. v. Cash*, 165 F.3d 26 (Table), 1998 WL 639171, at \*3 (6th Cir. 1998) ("[W]e do not believe that the issue of whether the miner received wages while on sick leave is the determinative factor. Rather, the determinative factor is whether an employment relationship continued to exist while the miner was on sick leave."). Sixth Circuit precedent supports the ALJ's standard and Elkhorn has failed to provide any evidence that Higgins's relationship with Elkhorn ended prior to August 3, 1998. Consequently, the ALJ's conclusion that Higgins met the one-year requirement by having 365 calendar days of employment is correct.

Regardless, to the extent there is any dispute over whether Higgins was employed by Elkhorn for 365 days, this issue is immaterial as Higgins's employment clearly meets the one-year requirement under the second alternative available as described by § 725.101(a)(32)(ii). The ALJ found that he had worked at least 260 days in or around the mine, well above § 725.101(a)(32)(ii)'s 125-day requirement. *Higgins*, No. 17-0475 at \*3. This court reviews the ALJ's factual finding that Higgins worked at least 125 days under the standard of substantial evidence. *Zurich*, 889 F.3d at 299. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)). Based on Higgins's schedule of working five days per week and two Saturdays per month, the ALJ concluded that Higgins would have had at least 260 days of

actual exposure, even under Elkhorn's account of time Higgins missed due to other injuries. *Higgins*, No. 17-0475 at *3.

Notably, Elkhorn has not challenged this calculation of 125 days or otherwise addressed whether this factual finding by the ALJ is supported by substantial evidence. Instead, Elkhorn focuses on contesting which dates Higgins was or was not on the payroll and whether Higgins should be considered "employed" during the time he missed for injury. But this argument is beside the point and does not contest the factual finding that matters, i.e. whether Higgins worked at least 125 days in or around the mine.

Even if Elkhorn had contested the ALJ's conclusion that Higgins had worked at least 125 days, we find the ALJ's factual findings supported by substantial evidence. The evidence upon which the ALJ relied, including Higgins's undisputed start and end dates and Higgins's testimony of his work schedule, is sufficient for a "reasonable mind" to accept as adequate and support the ALJ's conclusion that Higgins worked at least 125 days in or around the mine. And because the record demonstrates that Higgins worked at least 125 days in or around the mine, the ALJ's and the Board's legal conclusions are also correct. The relevant regulation, § 725.101(a)(32)(ii), unambiguously explains that a miner can establish one year of service time by working 125 days, and this interpretation was recently affirmed by this court in *Shepherd*. Given that the factual findings are not contested and the ALJ's legal conclusions are supported by both federal regulation and precedent, Elkhorn's challenge is without merit.

**IV.**

For the foregoing reasons, we AFFIRM the order of the Benefits Review Board.